# WINDHAM COUNTY,

## FEBRUARY TERM, 1868.

[CONTINUED FROM PAGE 27.]

---

LOUISA CLARK AND FESSENDEN CLARK *v.* SHUBAEL PECK AND
TULLY A. CLARK.*

[IN CHANCERY.]

*Husband and Wife. Notice.*

Where the *use* of property is given to a married woman, she takes it independent of the
marital rights of her husband, and a court of equity will restrain his creditors from coming
in, and attaching and disposing of the property or its products in payment of the hus-
band's debts.

Where a testator in his will provided for the payment of his debts and the support of his
widow, and gave a specific legacy to one of his sons, and then said, "I also give to my
daughter, Sophronia Clark, one third of the residue of all my estate, both real and per-
sonal. I also give the use of the other two thirds of my estate, both real and personal, to
Louisa Clark, the wife of my son Tully A. Clark, so long as she shall remain his wife or
widow, and, when she shall cease to remain his wife or widow, to the lawful heirs of the
said Tully A. Clark," it was *held* that the said Louisa took the property thus bequeathed
to her, to her separate use, and not subject to the marital rights of her husband, and, be-
ing in the possession and occupation thereof, she is clearly entitled in equity to the products
thereof, and to be protected against any attempt on the part of her husband's creditors to
deprive her of them.

Her title under the will was a matter of record. She was in possession, and that was at least
constructive notice to all the world of her right.

BILL IN CHANCERY. The bill set forth that on or about the
10th day of September, 1841, the oratrix, Louisa Clark, married
Tully A. Clark, her present husband, and ever since said marriage
said Louisa and Tully A. have lived, and still do live, to-
gether as husband and wife, and have, now living, three lawful
minor children; which was admitted in the answers of the defend-
ants. On or about the twenty-fifth day of April, 1850, Perez
Clark, the father of Tully A., since deceased, made and executed
his last will and testament, containing the following provisions,
viz.:

---

*This case was heard at the February term, 1867, and decided at the February
term, 1868.

" It is my will that all my just debts, and the charges of my funeral, be paid and discharged by my executor, hereinafter named and appointed, out of my estate as soon as conveniently may be after my decease.

· " I give to my beloved wife, Patience Clark, after the payment of debts as aforesaid, and the expenses of administration, the use of all my estate, both real and personal, so long as she shall remain my widow; and, when she shall cease to remain my widow, whether by death, or otherwise,

" I give to my son, Fessenden Clark, my slip in the meeting-house in the west parish of said Westminster.

" I also give to my daughter, Sophronia Clark, one third of the residue of all my estate, both real and personal.

" I also give the use of the other two thirds of my estate, both real and personal, to Louisa Clark, the wife of my son Tully A. Clark, so long as she shall remain his wife or widow, and, when she shall cease to remain his wife or widow, to the lawful heirs of the said Tully A. Clark.

" And I hereby nominate, constitute and appoint my son Tully A. Clark, to be executor of this my last will and testament."

The orators further alleged that Perez Clark deceased on or about the 25th day of December, 1850, leaving said will, and leaving certain real and personal estate; that said will was duly proved and legally established; that the orator, Fessenden Clark, was appointed administrator, with said will annexed; that said Fessenden accepted said appointment, and duly entered upon the duties thereof; that Patience, the widow of Perez, used and occupied said estate, both personal and real, during her lifetime, under said will; and that Patience deceased on or about the 15th day of October, 1855; all of which was admitted in the answers.

At the decease of said Patience, said oratrix, then and still living with Tully A., with her aforesaid minor children, was permitted by the orator, Fessenden, to use and occupy the estate of Perez, consisting of a homestead farm, and stock and other personal property thereon, as by the terms of said will she was entitled to, and ever since has so used and occupied the same until the time hereinafter mentioned; that on or about the first day of April, 1856, Louisa purchased of Sophronia her interest in the real estate of Perez, and took from her a bond in the sum of $1000, with a condition thereto as follows:

"Now the condition of the above obligation is such that, if within the term of five years the said Louisa Clark, her heirs, executors, or administrators, shall pay, or cause to be paid, to the said Sophronia Clark, her heirs, executors, or administrators, the sum of four hundred and eighty-five dollars, with interest thereon annually, and, at the request of the said Louisa, the said Sophronia shall make and execute to the said Louisa, a good and sufficient deed of conveyance of the said premises, and therein warrant and assure the same to her and them, free of all incumbrance, and shall, also, permit and suffer the said Louisa, her heirs and assigns, peacefully and quietly to receive and take to her and their own use, the rents and profits of the premises and every part thereof, until such conveyance and assurance shall be made and executed as aforesaid, without any let, suit, molestation, disturbance, or denial of her, the said Sophronia, her heirs, executors, or administrators, or any other person or persons by her, or any of their, means, right, title, or procurement, then this obligation to be void and of no effect; otherwise to be and remain in full force and virtue."

The orators further alleged that, since the execution of said bond, said Louisa has paid toward said purchase several sums of money, which came from the avails of her own estate, and which never came to the possession of her husband; that Shubael Peck, on or about the 20th day of August, 1859, prayed out a writ of attachment in his own favor against Tully A. Clark, and caused all the hay and unthrashed grain upon the premises occupied by the oratrix as aforesaid, to be attached; also, one horse, one harness, one wagon, one yoke of oxen, one pair of two years old steers, two yearling heifers, and two cows, all the property of said Louisa and the estate of said Perez, and held in trust for Louisa as aforesaid, and of the value of $500; and took said property away from said premises, and claims to hold the same by virtue of said attachment, and threatens to dispose of it in fraud of the rights of the orators; and said Louisa has been put to great trouble and expense in procuring said property to be receipted, and has caused to be paid to Peck about the sum of five dollars, which he demanded and required for the keeping of said property; that the oxen and the horse taken by Peck, were purchased by and for said Louisa with moneys of her own, which she inherited from her father's estate,

and which never came to the hands or possession of Tully A.; that the harness and the wagon taken by Peck, were a part of the personal estate of Perez, of which he died seized, the use of which was by said Perez in said will devised to Louisa, in trust and for her use and benefit; and that the hay and grain, and the two cows, steers, and yearling heifers attached by Peck, were the produce of, and were raised and grown upon, the real estate, of which Perez died seized, after the death of Patience, and said purchase of Sophronia, and were at the time they were attached and taken by Peck, and ever had been, held by said oratrix and for her use and benefit; all of which Peck and Tully A. knew at and before the time of said attachment.

Prayer, that said Peck, his agents and attorneys be enjoined from ever selling or in any way disposing of said property upon said attachment, and that said Peck be decreed to return said property to the orators, in as good condition as when taken, and make the orators whole for all damage or loss sustained in the premises, and, in case said property can not be so returned, to pay its true value in money; and prayer for general relief.

Peck in his answer averred his belief that Tully A. was the real purchaser of Sophronia Clark's interest, and that the money so paid was his money, and that the purchase was pretended to be made by Louisa and paid for by her, to cover up Tully A.'s property and earnings and defraud this defendant of his debt; denied that said hay and grain, horse, oxen, steers, cows, and heifers, were the property of Louisa or of the estate of Perez, or held in trust for Louisa; believed that the hay and grain were grown upon said farm by the personal labor of Tully A. and his employees, and the cows, steers and heifers were the product of the labor and earnings of Tully A. and said farm; that it may be true that the oxen and horse were purchased with money inherited by Louisa from her father, but insisted that they came into Tully A.'s hands as husband, and became absolutely his by operation of law, and that Louisa had no separate interest in them; averred that Louisa and Tully A. had fraudulently commingled her property and his together, for the purpose of concealing his property

and defrauding this defendant of his debt; that the property attached was worth no more than enough to pay his debt and the costs, which together would amount at least to $500; denied all knowledge that the property attached was the property of Louisa or of Perez's estate, and believed it to be the property of Tully A., and liable to attachment for his debts.

The several answer of Tully A. Clark admitted the averments of the bill, and alleged, among other things, that said Louisa, together with this defendant and their minor children, ever since the decease of said Patience, had lived upon, used and occupied, under said will and said purchase, the premises, of which said Perez died seized; that said premises were carried on by their joint labors; that the avails thereof were, with the agreement and consent of said Louisa and this defendant, applied to the use and support of said Louisa and her said family, and to the payment of said purchase-money to said Sophronia, and, on the first day of April, 1855, besides the support of said Louisa and her said family, there had been paid to said Sophronia upon said purchase, from the avails of said premises, the sum of one hundred and thirty-seven dollars and twenty cents; that the hay and grain, cows, steers and heifers attached and taken by said Peck, were the produce of, and were raised and grown upon, said premises so held and occupied to said Louisa's use as aforesaid, and they were all held and treated by said Louisa and this defendant as the separate property of said Louisa; and, knowing and regarding her equitable interest therein, this defendant had not at any time sold or disposed of the crops and stock produced, grown or raised upon said premises, except for the use and benefit of said Louisa and with her general or special consent.

The only testimony on the part of the orators was that of two witnesses, which tended to show that the use of all of said property would not more than support said Louisa Clark and her said children. Perez Clark's real estate was apprized at $1340, at his decease. No testimony was introduced by the defendants. The answer of Peck was traversed.

The case was heard on bill, answers, replication, and proofs, at the September term, 1864, BARRETT, Chancellor.

Inasmuch as the property was receipted, and has remained in the possession of the oratrix, an injunction simply restraining the defendant Peck from pursuing it, was all that seemed necessary. It was therefore ordered that a decree be entered for a perpetual injunction to that intent and effect, and for the oratrix to recover costs of the defendant Peck.

Appeal by the defendant Peck.

*Butler & Wheeler*, for the defendant Peck.

The will of Perez Clark does not limit the use of two thirds of the farm to the oratrix, to the exclusion of the marital rights of her husband. *Brown* v. *Clark*, 3 Ves., 166; *Houghton* v. *Hapgood*, 13 Pick., 154; 2 Roper on Husband and Wife, 97, 98; Toller on Executors, 225; 2 Story Eq., 608, 609; *Frary et al.* v. *Booth et al.*, 37 Vt., 88; *Stanton* v. *Hall*, 2 Russell & Mylne, 175; *Tyler* v. *Lake, Ib.*, 183; *Elliott* v. *Cordell*, 5 Madd., 96.

To exclude the husband's rights, requires affirmative words expressing that intention on the part of the testator. At the decease of Patience, the widow of Perez, the oratrix became seized of a freehold estate in two thirds of the farm. The rents, profits and products of this estate were the absolute property of her husband. Reeve's Dom. Rel., 27; *Clapp* v. *Stoughton*, 10 Pick., 463; *Shaw, admr.*, v. *Partridge*, 17 Vt., 626; *Bruce and wife* v. *Thompson*, 26 Vt., 741.

The purchase of Sophronia's third in the name of the oratrix, was the same, in effect, as if made in the name of her husband. Reeve's Dom. Rel., 60; 2 Story Eq., 443.

The right of the oratrix to the oxen and horse, must stand upon the allegation in the bill that they were purchased with " moneys of her own, which she inherited from her father's estate," and the proof, by the cross-examination of Morse, that the moneys came to her husband's possession. *Parks & Co.* v. *Cushman, tr.*, 9 Vt., 320; 26 Vt., 741; 2 Story Eq., 631; *Ward* v. *Morrill et al.*, 1 D. Chip., 322.

The source of the oratrix's property in the cows, steers and heifers, does not appear with sufficient distinctness to show that

she has any interest in them. Toller on Executors, 226; 2 Story Eq., 625; 2 P. Williams, 82, 83, 341.

No question arises now as to the equitable right of the oratrix to have any portion of this property secured to her and her children's maintenance.

But if the bill were framed with the proper aspect, there is not enough alleged or proved to entitle her to any allowance for maintenance. 24 Vt., 391; Reeve's Dom. Rel., 12, n. 1; *Davis* v. *Newton*, 6 Met., 537; 24 Vt., 395; 37 Vt., 91; 2 Story Eq., 643; 1 Roper, 171; *Elliott* v. *Cordell*, 5 Madd., 96.

The orator and oratrix could join in bringing this bill, only so far as he was trustee of the property and she the *cestui que trust*, and can maintain it only so far. They stood in this relation only as to the harness and wagon.

*H. E. Stoughton*, for the orators, cited, as decisive of the claims of the defendant Peck, *Russell* v. *Fillmore*, 15 Vt., 130; *Blaisdell* v. *Stevens et al.*, 16 Vt., 179; *Richardson, admr.*, v. *Merrill et al.*, 32 Vt., 28; 19 Vt., 410; *White* v. *Hildreth and tr.*, 32 Vt., 266; *Webster* v. *Hildreth et al.*, 32 Vt., 457; *Caldwell, admr.*, v. *Renfrew*, 33 Vt., 213; *Barron* v. *Barron et al.*, 24 Vt., 375, 391–397; 32 Vt., 34.

The opinion of the court was delivered by

PIERPOINT, C. J. It appears in this case, that Tully A. Clark, one of the defendants, is the husband of Louisa Clark, the oratrix, and the son of Perez Clark deceased. Fessenden Clark, one of the orators, is the administrator, with the will annexed, of the said Perez Clark. Shubael Peck, the other defendant, is a judgment creditor of the said Tully A. Clark, seeking to collect his execution by the sale of certain property which he has taken thereon, claiming it to be the property of the said Tully A. The orators claim that the said property belongs to the oratrix, Louisa Clark, being property or the product of property that was bequeathed by the said Perez Clark to her for her separate use. This bill is brought to restrain the defendants from disposing of the said property, and for its return.

The main question involved is as to the construction of that clause in the will of the said Perez Clark, by which the bequest is made to the said Louisa Clark.

The testator in his will provides for the payment of his debts and the support of his widow, and gives a specific legacy to his son Fessenden, and then says: "I also give to my daughter, Sophronia Clark, one third of the residue of all my estate, both real · and personal. I also give· the use of the other two thirds of my estate, both real and personal, to Louisa Clark, the wife of my son Tully A. Clark, so long as she shall remain his wife or widow, and, when she shall cease to remain his wife or widow, to the lawful heirs of the said Tully A. Clark." Does Louisa Clark take the property thus bequeathed to her, to her separate use, or subject to the marital rights of her husband? The rule, as laid down by Judge Story and supported by numerous decided cases, is this : " That, where, from the terms of a gift, settlement or bequest, the property is expressly or by just implication designed to be for her separate and exclusive use (for technical words are not necessary), the intention will be fully acted upon, and the rights and interests of the wife sedulously protected in equity;" but that the purpose must clearly appear beyond any reasonable doubt. 2 Story's Eq., 608.

In ascertaining the intention of the testator (for that is always to be sought for in construing instruments of this kind), we are to be governed by the same rules, in a case like the present, as apply in all other cases of the construction of wills. We are not to look at the words alone to ascertain the intent, but the language used is to be considered in connection with the situation of the parties, the surrounding circumstances, the subject matter, the object to be accomplished, etc.; as it is proper to do in the construction of all written instruments. This is too well settled to require argument or authority in its support. In applying this principle to the case in hand, what aid do we derive from such sources? The interest given by the will to Louisa Clark, is only the *use* of certain property for a specified period, and then the property itself ·is given to the children of her husband. · She is not the child of the testator ; her husband is. They had children, and they and

their children were living together in harmony at the time the will was made. There is nothing to show any ill will on the part of the testator toward either. The natural course under such circumstances would seem to have been for the testator to give the property to his son, Tully A., either absolutely or for his life or the life of his wife, and then to his children. In deviating from this course and in giving the use to his wife, it is apparent the testator had a purpose ; and it is difficult to conceive of any other purpose than that she should hold the property to her sole and separate use, to the exclusion of the marital rights of the husband. If the testator had supposed that, in giving this use to the wife, the legal effect would be to vest such use absolutely in the husband, would he have made such a provision ? If so, why not give it directly to the husband ? The legal effect is the same. Why go through the form of apparently giving her something, when in fact he gives her nothing ?

If the *title* to the property had been given to the wife, then there would have been something for the will to operate upon aside from its use ; the title would have been in her, subject to the rights of the husband in its use, and we could reasonably suppose such to have been the intent of the testator. But here the use only is given, and that necessarily excludes the use of the husband. To have added *to be held to her use,* would have been mere repetition. If we hold that she takes it subject to the marital rights of the husband, we render the provision wholly nugatory so far as the interests of the wife are concerned, and make it impossible for her to avail herself of it in any form, and, also, defeat the manifest intent and purpose of the testator in making it.

We think the fair and just implication arising from the language of the provision, viewed in the light of the facts and circumstances always proper to be considered in such cases, is that it was the clear intention of the testator, to give the use of the property for the sole and exclusive benefit and use of the said Louisa ; and this, too, beyond a reasonable doubt.

If there was occasion for it, I think something might be said as to the reasonableness of the rule requiring that the rights of the wife should be established beyond a reasonable doubt, as against

the claims of the husband. Why she is not entitled to the benefit of a fair balance of testimony, as in other civil cases, is not quite apparent to me. I am aware of the old idea that the male is the superior branch of the human family, and that the rule referred to has its origin in that idea, and that all doubts are to be solved and all presumptions raised in favor of the husband and against the wife, so far as her property is concerned.

This idea and the rules that sprung from it, had *their* origin in a period much nearer the days of semi-barbarism than the present; and as civilization and christianity have advanced in the world, the public mind, as evidenced by both legislative and judicial action, has become much more inclined to place the rights of the wife more nearly upon an equality with those of the husband, in respect to property. The court of chancery in this state is constantly extending its action in aid of the rights of the wife to her separate property.

It appears from the bill, answers and proofs, that, after the decease of the widow of the testator, to whom he gave all his property during her life, the said Louisa, with the consent of the administrator as aforesaid, went into the possession of the said two thirds with her said husband and children, and still continues to occupy the same, claiming to have the sole and exclusive right to the use of the same, her said husband acquiescing therein; that she bargained with the said Sophronia for the purchase of the other third of the real estate of the said Perez, took a bond for a deed, and paid a part of the purchase-money out of her own money, being the proceeds of her two thirds of the said estate, and took the possession; that the said Louisa and her husband both treated and regarded the use and product of this property, as the separate estate of the said Louisa, the said Tully A. disposing of the product only with her consent and under her direction, and applying the proceeds in the support of herself and family, and, by her directions, in payments toward the share of the said Sophronia.

The right to the use of this property being in the said Louisa, and she being in the possession and occupation thereof, she is clearly entitled in equity to the products thereof, and to be protected against any attempt on the part of the creditors of her husband to·

deprive her of them.   Her title under the will was a matter of record.   She was in possession, and that was at least constructive notice to all the world of her right.

The property taken by the said Peck, consisted of hay, and grain in the straw, which grew upon the said premises, and were on them when taken; a yoke of oxen and a horse, which the said Louisa purchased with her own money, obtained independently of her husband, and which were in her possession on the farm ; a wagon and harness, which belonged to the estate of the said Perez, the use of which passed to the said Louisa, and were in her possession ; two steers, two cows and two heifers, which were grown and raised upon the said premises and were a part of the proceeds, product or income thereof.

There is nothing in the case to show that the said Tully A. ever owned any part of this property, or ever paid a dollar toward its purchase or procurement, or ever claimed to own it, or ever exercised any acts of ownership over it except as subservient to her rights as its owner.

Under such circumstances, we think it inequitable that the creditors of the said Tully A. should come in, and seize that property, and dispose of it in payment of his debts; and the said orators having come into a court of chancery, and asked to be relieved from the attempt of the defendants to do so, we think they are entitled to the relief prayed for.

Decree of the chancellor affirmed.