## HIRAM BLACKMER'S EXR. *v.* MARY F. BLACKMER ET AL.

*Construction of will. What the words " other goods and chattels " convey.*

1. The testator devised to his wife, in lieu of dower, his " home place containing about four and one-half acres, be the same more or less, to have and to hold the same during her natural life, or so long as she shall remain my widow, and all the household goods, furniture, provisions, and other goods and chattels, except the piano, which shall go to my heir, which may be therein at my decease, during her life and so long as she remains my widow aforesaid." The question being whether the words " other goods and chattels " conveyed to the widow the income of certain promissory notes, *held,* that a court of equity, upon a bill for the construction of the will, would look into the circumstances under which the will was made and its other provisions in determining the intention of the testator in that respect; and that in this case the notes would not be included.

2. Such words would convey personal property in the outbuildings on said home place valued at $176, and consisting of a sleigh, buggy, wagon, robes, harness, tool-chest and tools, oats and firewood.

Bill for the construction of the will of Hiram Blackmer, brought by his executor, Charles F. Kingsley, against his widow, Mary F. Blackmer, and Frank E. Briggs, guardian of Charles G. Winslow. Heard upon bill and answers at the September term, 1890. Taft, Chancellor, decreed *pro forma* that the widow was entitled to the income of the promissory note. Briggs appeals.

The will of Hiram Blackmer was as follows:

" I give and devise to my nephew, Charles F. Kingsley of Salisbury, Vermont, one thousand dollars ($1,000.)

" I give and devise to my nephew, Denison B. Kingsley of Salisbury, Vermont, one thousand dollars ($1,000.)

Blackmer's Exr. *v.* Blackmer et al.

" I give and devise to my beloved wife in lieu of her dower, my home place where we now reside, situated on Pearl street in said Brandon, containing about four and one-half acres, be the same more or less, to have and to hold the same during her life, or so long as she shall remain my widow, and all the household goods, furniture, provisions, and other goods and chattels, excepting the piano, which shall go to my heir, which may be therein at the time of my decease, during her life, and so long as she shall remain my widow aforesaid. But this bequest is upon the condition that my said wife shall not rent the house included therein to any family, nor allow any family to reside therein upon any consideration, and upon the further conditions that she shall keep the buildings in good repair and pay all taxes and assessments levied against said property during her occupancy of the same; and upon failure to observe said conditions, her right to the said property, real and personal, shall be forfeited.

" I also give and devise to my said wife the dividends upon my bank stock of $3,000 in the First National Bank of Brandon, Vt., during her life, or so long as she shall remain my widow as aforesaid.

" I also give to my said wife the right to enter upon my swamp land and get wood therefrom for one fire during her life, or so long as she shall remain my widow as aforesaid; provided said swamp land is not otherwise disposed of before my decease. But the above mentioned bequests to my said wife shall be in lieu of the provisions made for her in the marriage contract between herself and me, now in the possession of E. J. Ormsbee, Esq. If she shall choose to accept the provisions of said contract, then the above bequests to her shall be void and of no effect."

The estate of Hiram Blackmer at the time of his decease consisted of the following property :

Home place on Pearl street, in the village of Brandon, consisting of about four and one-half acres, and of the value of about the sum of $3,400, upon which there was a small tenant house that rented for $3 per month.

Creek meadow in Brandon, containing about 38 acres, and of the value of about $1,900.

One piece of swamp land in Brandon, containing about eleven and one-half acres, and of the value of about $400.

One piece of waste or pasture land in Brandon, containing about eleven acres, and of the value of about $30.

One piece of pasture land in Pittsford, containing about 25 acres, and of the value of about $100.

Household furniture of the value of about $580, and one piano.

Other specific personal property as follows: One sleigh of the value of $20; robes and blankets of the value of $20; one wagon of the value of $12; one top buggy of the value of $40; one harness of the value of $8; one tool chest and tools therein of the value of $10; one lot of hay of the value of $20; 40 bushels of oats of the value of $16; lumber of the value of $2; and firewood of the value of $28, amounting to the sum of $176.

Thirty (30) shares of capital stock of the Nirst National Bank of Brandon, the same named in the will of said Blackmer, of the value of about $5,000, the par value of which stock was $100 per share, which had for many years produced a semi-annual dividend of 5 per cent.

Promissory notes, both secured and unsecured, against various persons and parties, mostly good and collectible, in amount about $5,790, of the value of about $5,400.

Cash in bank, $791.15. The "other specific personal property" was in the outbuildings on the home place, and the promissory notes and certificates of stock were in a small trunk in the sleeping room of the testator on said home place where he had been accustomed to keep them and other valuable papers in his lifetime. Mary Blackmer was the second wife of Hiram Blackmer, and before their marriage an ante-nuptial contract was entered into between them by which it was agreed that, in the event of her surviving him, she should receive from his estate in lieu of all other claims upon it the sum of $3,000 in money, his household goods, and the right to be maintained at the expense of his estate upon his home place for one year from the time of his decease.

At the time of their marriage she was 38 and he 72 years of age. The testator deceased about four years afterwards, leaving as his only heir Charles G. Winslow, the son of a daughter by his first wife.

The controversy in this suit was between the widow and heir, as to whether the former was entitled to the use of the "other specific property" and the income of the promissory notes.

*Ormsbee & Briggs* and *E. R. Hard*, for appellant.

The words "other goods and chattels" add nothing to the articles specifically mentioned in connection with the home place. They refer to other things of the same general kind and do not include these notes. *Bullard* v. *Goffe*, 20 Pick. 256 ; Wms. Exr. 1273 ; *Dale* v. *Johnson et al.*, 3 Allen 364 ; *Benton* v. *Benton*, 63 N. H. 289 ; *Johnson* v. *Goss*, 128 Mass. 433 ; *Peaslee* v. *Fletcher's Estate*, 60 Vt. 188.

The testator manifestly did not intend that these notes should pass to his widow, and it is his intention which should govern. *Kennard* v. *Kennard*, 63 N. H., 310.

The notes would not pass under the words of this devise, which are apt to convey only such chattels as savor of the locality. 2 Wms. Exrs. 1179 ; Lady Aylesbury's case, Ambler, 68; *Chapman* v. *Hart*, 1 Ves. Sen. 271 ; *Moore* v. *Moore*, 1 Bro. C. C. 127 ; *Flemming* v. *Brooke*, 1 Sch. & Lef. 308 ; *Brooke* v. *Turner*, 7 Sim. 671 ; *Read* v. *Stewart*, 4 Russ., 69 ; *Mann* v. *Mann*, 1 Johns. Ch. 231 ; *Penniman* v. *French*, 17 Pick. 404 ; *Lock* v. *Noyes*, 9 N. H. 430.

*J. C. Baker*, and *Butler & Moloney* for Mary Blackmer.

The modern tendency is to reject a restricted construction, and to give to the language of a will the broadest effect consistent with its usual meaning. *Smith* v. *Smith*, 17 Gratt., 268 ; *Swinfen* v. *Swinfen*, 29 Beav. 207 ; *Kennedy* v. *Kelley*, 28 Beav.

223 ; *Brown* v. *Coggswell,* 5 Allen, 559 ; 2 Jarman, 359, * 756 ; *Campbell* v. *Prescott,* 15 Ves. 593 ; *In re* Cushing's Will, 58 Vt. 293 ; *Randall* v. *Joslyn,* 59 Vt. 557 ; *Chaplin* v. *Doty,* 60 Vt. 712.

The opinion of the court was delivered by

START, J. In order to decide the questions presented in this case, it is necessary to ascertain what the testator intended by the words, " other goods and chattels," in the following clause of his will :

" I give and devise to my beloved wife, in lieu of dower, my home place, where we now reside, situate on Pearl St., in said Brandon, containing about four and one-half acres, be the same more or less, to have and to hold the same during her natural life, or so long as she shall remain my widow, and all the household goods, furniture, provisions, and other goods and chattels, except the piano, which shall go to my heir, which may be therein at my decease, during her life, and so long as she remains my widow aforesaid."

The widow of the testator contends that the words, " other goods and chattels," are operative to convey to her during her life the income from promissory notes, amounting to $5,790., which were in the house at the time of the testator's decease, also, to convey to her the use of certain articles of personal property in the outbuildings on said premises, valued at $176. The heir-at-law of the testator contends that these words are not susceptible of such construction, and that such was not the testator's intention.

The word " chattels " may include promissory notes, when from an examination of the whole will, the surrounding circumstances, and the situation of the parties, such appears to have been the testator's intention. The intention of the testator must control. *Clark* v. *Peck,* 41 Vt. 152 ; *Peaslee* v. *Fletcher's Estate,* 60 Vt. 188.

It appears that the testator did not intend to dispose of all his estate by will. He intended to die intestate as to a large por-

tion of his estate.   He left but one heir, a son of his daughter by a former marriage, to whom he was very devotedly attached. Aside from the use of property given to the widow, only $2,000 of an estate valued at some $17,000 is disposed of by the will. The grand-son takes nothing under the will, and it is apparent that the testator intended he should take the bulk of his estate as his heir-at-law.   The testator was married to the defendant, Mary F. Blackmer, in November, 1885 ; he was then seventy-two years of age, and she was thirty-eight.   Prior to their marriage, they entered into a marriage contract, by the terms of which she was to have his household goods and three thousand dollars out of his estate as her absolute property.

The will appears to be drawn with great care and after careful consideration of the effect of all its provisions, and many of its provisions indicate that the testator did not intend his wife to derive any advantage by accepting of the provisions made for her by the will, in lieu of those contained in the marriage contract.   The use of the home place is subject to the following conditions : " But this bequest is upon the condition that my said wife shall not rent the house included therein to any family, nor to allow any family to reside therein upon any condition ; and upon the further conditions that she shall keep the buildings in good repair, and pay all taxes and assessments levied against said property during her occupancy of the same ; and, upon failure to observe said conditions, her right in and to said property, real and personal, shall be forfeited.

This language indicates great care and caution on the part of the testator.   It indicates that the testator was acting considerately and understandingly, and understood what conditions were necessary, in order that his heir might receive his estate unincumbered and in good repair.   We should not look for more explicit language, had the testator been making a contract for the use of this property instead of providing a home for his wife.   Her right

16

to enjoy the property was made to depend upon a strict compliance with the conditions imposed.

The following clause is material in determining the intention of the testator : " I give my said wife the right to enter upon my swamp land and get wood therefrom for one fire during her life, or so long as she shall remain my widow as aforesaid." This gift of wood for " one fire" does not indicate extravagance on the part of the testator. If the testator had intended to be generous with his wife, and his object and purpose in making a will was to provide more bountifully for her than he had done by the marriage contract, it is difficult to find a reason for his thus restricting her in the use of firewood. This clause as well as the preceding one would seem to indicate that one of the objects the testator had in view in making his will, was to so guard and protect his estate that the same would finally go to his heir without being materially depreciated by reason of his wife's maintenance. The will also provides that the bequests to his wife are in lieu of the provisions made for her by the marriage contract ; and, if she accepted the contract, she should take nothing under the will. This provision hardly indicates an intention on the part of the testator in making his will, to provide more bountifully for his wife than he had done by the contract ; and we cannot resist the conclusion that the testator intended his heir to derive more benefit from his making a will than his wife.

The following clause indicates that the testator understood the use of language and knew what words were necessary to express his intention : " I give and devise to my said wife the dividends upon my bank stock of three thousand dollars in the First National Bank of Brandon, Vt., during her natural life, or so long as she shall remain my widow as aforesaid." This clause is very material in determining the testator's intention in respect to the notes in question. They were kept with the certificates of the bank stock in a trunk in the house, and were there at the time of the testator's decease. If the testator intended his wife to have

Blackmer's Exr. *v.* Blackmer et al.

the income from these notes, it is difficult to give any reason for his thus specifying the bank stock, and leaving notes nearly double in amount of the bank stock in the same place to pass under the general words, "other goods and chattels." If it had been the testator's intention to give his wife the income from these notes, it is hardly reasonable to suppose he would have used words so general and inapt for that purpose. We think the testator did not intend to dispose of so important a part of his estate as these notes without any specific reference to them, and we hold that the widow is not entitled to the income from the same.

II. The articles of personal property in the outbuildings, valued at $176, are "*goods and chattels.* The outbuildings are a part of the home place. The testator gave his wife the use of his home place, and the household goods, furniture, provisions, and other goods and chattels which should be therein at the time of his decease. We hold that the testator intended his wife to have the use of these articles of personal property, and did not intend to restrict her to the use of such articles as were in the house. The words, "other goods and chattels therein," have reference to goods and chattels in the buildings on the home place, and not to any particular building thereon.

*The pro forma decree of the Court of Chancery is reversed, and the cause remanded to that court, with a mandate to enter a decree according to the views above expressed.*