EDWARD N. MERRILL, Ex'r, In Equity,

*vs.*

JOHN H. WINCHESTER et als.

Somerset.    Opinion April 9, 1921.

*Bequests in a will in the following language, "to each of her children, grandchildren and great grandchildren now living or hereafter born (17 now living) I give and bequeath———each" embraces and includes all children, grandchildren and great grandchildren who might be in esse at the time of decease of testator, that is, those born or who might be born within nine months thereafter. Reservations in a will as to the use for a limited time of certain real estate, being an easement in gross and merely a personal right which is neither assignable nor inheritable, are valid.    The enumeration of certain articles such as personal apparel, jewelry, etc., restricts the general words to articles of the same class as those enumerated and does not include money.    There is no rule of law which prevents a person from acting as trustee for himself and others.    By "articles of personal property" is meant goods and chattels, not money nor securities.    No ademption of legacies except of those paid by testator himself in his life time; nor partial intestacy.*

Bill in equity to obtain the construction of certain paragraphs in the will of David D. Stewart, late of St. Albans, deceased.

1.    Item 3 is as follows: "To my sister, Mrs. Elizabeth M. Winchester of Corinna, I give and bequeath six thousand dollars ($6,000.00), and to each of her children, grandchildren and great grandchildren now living, or hereafter born (17 now living) I give and bequeath the sum of three thousand dollars ($3000.00) each, to be paid within two years after this will is admitted to probate, to those then living, and to those born afterwards, within two years from the date of birth.    To be paid out of any moneys, or collectible notes, or stocks or bonds belonging to my estate, as may be found most convenient by my executor or his successor in office, or out of the proceeds of the sales of real estate, if necessary."

*Held:*

1.    That as Mrs. Winchester died during the lifetime of the testator her legacy of $6,000 passed under R. S., Chap. 79, Sec. 10, to her lineal descendants of whom there were four branches.

2.   That so far as the $3,000 bequests are concerned the testator intended to bestow that sum upon all the children, grandchildren and great grandchildren of his sister who might be in esse at the time of his own decease; that is, upon those then born or who might be born within nine months thereafter, and that the rule against perpetuities was not thereby infringed upon and need not be considered.

3.   That while the legacies vested as stated above, they were liable to be divested by death prior to the prescribed time of payment as it was the survivors at that time who by the terms of the will were to receive the gift.

II.   Item 8 is as follows: "I give and devise to Jeannette Winchester of Corinna, the store and lot in St. Albans village, occupied in part by O. W. Bigelow, and in part by myself as my office. To have and to hold to herself, and to her heirs and assigns forever. Reserving, however, the rooms which constitute my office, as long as my executor and his successor may desire, in closing up my estate, and in taking care of my office library until the books and papers of all kinds, desks, and personal property of every description, are removed or disposed of, as hereinafter provided. Reserving also my said office rooms for the use of the legatees in Section No. 3 of this will, as long as they may desire. And further reserving the stairs and woodshed underneath, for the use of said office as long as said executor and his successor, and said legatees, may desire, in the same manner as I have used them."

*Held:*

That the reservations are valid, the interest reserved being an easement in gross; merely a personal right which is neither assignable nor inheritable.

III.   Item 9 involves the same questions as item 3.

IV.   Item II is as follows: "I give and devise to Closson C. Hanson and Florence M. Hanson, his wife, my homestead property, where I have lived with my dear wife many years. To have and to hold to them and their heirs and assigns forever. And to said Florence M. Hanson and her two daughters, Mary and Helen Hanson, I give and bequeath my dear wife's dresses, and articles of personal clothing, and apparel, and ornaments, and rings, and watches, of which she had three (one in Blake's vault, Bangor, and two at home); and all of her personal property of every kind in my house, including everything inherited from her father and mother, and everything given her by relatives and friends and myself; unless some particular article is otherwise disposed of in this will. All of these things of hers are dear indeed to me and I desire said Florence and her daughters to keep and use them with care, in remembrance of my dear wife."

*Held:*

1.   The question whether the money and coins described and listed in Exhibit B were the property of the deceased wife of the testator we must decline to answer. It is one purely of fact and is not within our province in this proceeding for the construction of the will.

2.  The items contained in Exhibit B, assuming them to belong to the testator, were not covered by the terms of the bequest.  It was the evident intention of Mr. Stewart to bequeath not money but articles in the nature of keepsakes, valuable because of their personal associations and not of their pecuniary worth.  The enumeration of certain articles such as personal apparel, jewelry, etc., restricts the general words to articles of the same class as those enumerated and does not include money.

3.  From the personal and intimate nature of the property itself, the tender reference to it made by the testator, and from the relation of the legatees to one another, the inference is clear that Mr. Stewart desired that these articles should be kept together and treasured by the legatees as a class, as a family, and in the case of the death of any legatee that the survivors should take. Helen having died, her mother Florence, and her sister Mary, take as survivors.

V.  Item 12 is as follows:  "To said Closson C. Hanson I give in trust for himself and wife and children, as may suit the needs and wishes of each, the libraries in my house in rooms below and above, and all books, magazines, papers, etc. and all articles of personal property in said house not herein otherwise disposed of; and also all personal property of every kind in my stable and buildings, not heretofore mentioned."

*Held:*

1.  This is a valid trust.  There is no rule of law which prevents a person from acting as trustee for himself and others.

2.  Nor is the gift void for uncertainty.

3.  This being an immediate gift in trust to a class, those take as beneficiaries who were living at the testator's death, namely, Closson C., Florence M., Glenn and Mary Hanson.

4.  The notes, mortgages, certificates of stock, contracts of sale and checks, all of the appraised value of nearly a half million dollars, found in the house at the testator's death and listed in Exhibit C, did not pass under this item. By "articles of personal property" was meant goods and chattels; not money nor securities.

VI.  Item 22 disposes of the Minnesota property which came to David from his brother Levi.

*Held:*

1.  The same questions are involved here as in item 3, already considered, and the same parties take as under that item for the reasons already stated.

2.  The power of sale given to the plaintiff herein is valid.

3.  The question as to who holds the legal title to said real estate we deem it unnecessary to answer.  It may depend upon the rules of law and the statutes obtaining in Minnesota where the land is situated.  Moreover it is an academic rather than a practical question.

VII.  Item 23.  This item disposes of Minnesota real estate standing in the testator's name, and the answers given in item 3 and 22 are applicable here.

VIII. Item 24. This item concerns testator's real estate in Maine, and the answers to the questions involved in items 3, 22 and 23 cover this.

IX. There is no undisposed residuum. Mr. Stewart intended to create none, and there is no residuary clause. He so framed his will that item 3 was made to perform somewhat the function of a residuary clause through which as a conduit all his property was to pass, except in case of special gifts. There has been no ademption of legacies except of those paid by himself in his lifetime; nor was there partial intestacy. Not one but all the living descendants of his sister were the selected objects of his benefaction, and he gave suitable and effective expression to his wish.

On report. This is a bill in equity seeking and praying for the construction and interpretation of certain paragraphs in the will of David D. Stewart, late of St. Albans, deceased. After a hearing upon the bill, answers, and proof, questions of law of sufficient importance having arisen, the case was reported to the Law Court for its determination upon so much of the evidence as was legally admissible. Bill sustained with costs. Decree in accordance with the opinion.

Case is fully stated in the opinion.

*J. W. Manson, and G. H. Morse,* for plaintiffs.

*Merrill & Merrill, Butler & Butler, H. R. Coolidge, P. A. Smith, and O. H. Drake,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

CORNISH, C. J. Bill in equity brought to obtain the legal construction of the will of David D. Stewart, late of St. Albans, Maine. Mr. Stewart died December 31, 1917, the will was duly probated on February 19, 1918, and Edward N. Merrill was duly appointed executor. On May 18, 1918, the will was probated in Minnesota and letters testamentary were issued to Mr. Merrill in that State. He died on May 9, 1919, and John W. Manson was duly appointed as his successor, as nominated in the will.

The will is a lengthy document, containing twenty-six items, and of these eight are before the court for interpretation. Their construction will be aided by a recital of the general situation as deduced from the will itself, from the admitted allegations in the bill and from the evidence.

David D. Stewart was a well known attorney at law and a man of very advanced years at the time of his death.    He had made a former will on April 10, 1871, and a codicil thereto on December 10, 1887, but the subsequent death of his wife followed by that of his only brother Levi M. Stewart of Minneapolis, Minnesota, on May 3, 1910, had so changed the situation as to require a revocation of the former will and codicil and the making of this last will on May 22, 1911. The testator had no issue, his nearest of kin being his sister Elizabeth M. Winchester and her descendents, namely her son, John H. Winchester, eight grandchildren and eight great grandchildren, seventeen in all at the time the will was made.

His brother Levi had accumulated a large fortune in Minneapolis, of the appraised value of $1,849,055.24, all of which, with the exception of $28,924.24, was in real estate.    By his last will Levi disposed of $495,000 in specific bequests to various persons and institutions and gave all the residue to David.    In the item bestowing this residue, Levi expressed the desire and request that David after retaining so much as he might deem best should "dispose of the rest by gift before his death or by gift and bequest in his will by giving the same to such persons or institutions, public or private, as in his judgment will do the most good."    David promptly and faithfully fulfilled his brother's request.    He was one of the executors of his brother's will and with his co-executor Charles Morse proceeded to sell portions of the real estate and with the proceeds paid the outstanding debts, inheritance and other taxes, the specific bequests, and expenses of administration.    They settled their final account in Minnesota and closed that estate.    The balance of the proceeds of the real estate sold by the executors, amounting approximately to $800,000 was paid over to David and the unsold real estate passed to him as sole residuary devisee.

While this settlement of Levi's estate was in progress and only four months after the executors were first licensed by the Probate Court in Minnesota to sell the real estate, David made this will in question, and in furtherance of his brother's wish he bequeathed under item 22 to various educational and charitable institutions amounts varying from $5,000 to $75,000 and aggregating $720,000 each to constitute an endowment to be known as the "Levi M. Stewart Fund."    Then with the proceeds of the sales of Levi's Minnesota real estate David paid in his lifetime all the legacies to the various institutions pro-

vided for in item 22 of his own will. But instead of making a codicil stating that fact he drew his pen through the several bequests so paid, thereby making a practical physical revocation which has been accepted by all parties in interest.

. The balance of Levi's estate was in David's hands at his decease, together with the property which he had personally accumulated, making a total of $1,197,504.37 according to the inventory of his estate, of which real estate in Maine amounted to $5,260, real estate in Minnesota $127,003, goods and chattels in Maine $4,514.30, rights and credits in Maine $477,466.04, and personal property in Minnesota $583,261.33.

With his property coming from these two sources, and with those who would naturally be the recipients of his bounty confined to his sister and her descendants, the testator penned his will. We will now consider in their order the paragraphs whose construction is requested.

"Item 3. To my sister Mrs. Elizabeth M. Winchester of Corinna, I give and bequeath six thousand dollars ($6000.00) and to each of her children, grandchildren and great grandchildren now living or hereafter born (17 now living) I give and bequeath the sum of three thousand dollars ($3000) each, to be paid within two years after this will is admitted to probate, to those then living, and to those born afterwards, within two years from the date of birth. To be paid out of any moneys, or collectible notes, or stocks or bonds belonging to my estate, as may be found most convenient by my executor or his successor in office, or out of the proceeds of the sales of real estate, if necessary."

No question is raised as to the validity of the gift of $6,000 to the sister Mrs. Winchester. She having died during the lifetime of the testator, this legacy passed under R. S., Chap. 79, Sec. 10, to her lineal descendants of whom there were four branches, viz: one-fourth to her son John H. Winchester; one-fourth to Olive Winchester only child of Charles Winchester deceased son of Elizabeth; one-eighth to each Florence M. Hanson and Densmore Hilliker, children of Mary W. Hilliker deceased daughter of Elizabeth; and one-eighth each to John S. Thurston and Dora T. Quimby, children of Alice W. Thurston, another deceased daughter of Elizabeth. *Nutter* v. *Vickery*, 64 Maine, 490; *Bray* v. *Pullen*, 84 Maine, 185; *Wilder* v. *Butler*, 116 Maine, 389, 392.

The important question under item 3 is as to how far into the future the testator intended that his gifts of $3,000 each should be projected. Did he purpose to bestow that sum upon all the children, grandchildren and great grandchildren of his sister who might be in esse at the time of his own decease or upon those who might be born at any time however remote? If the former, then the bequests are vested and valid; if the latter, then the gifts to such of the great grandchildren of Elizabeth Winchester as may be the unborn children of the unborn children of John H. Winchester are void as offending the Rule against Perpetuities. The words in item 3 which give color to the contention of invalidity are "hereafter" and "afterwards," and if these words were used by the testator in their broadest possible sense without limit as to time, there is ground for such contention. But we are not to accept these words alone as fettering us to that construction and forbidding us to go beyond them. We must study the instrument as a whole and determine the sense in which they were used in the light of the context and the circumstances.

Our first duty then is to construe the will and ascertain Mr. Stewart's actual and expressed intention in relation to those who should receive these $3,000 bequests, and in this ascertainment we need not discuss the Rule against Perpetuities. That rule neither aids nor seeks to aid in interpretation. On the contrary it defeats intention and obstructs the testator's wish. We must therefore first construe the will and if when construed the rule must apply, then we are bound to apply it and follow the consequences. *Strout* v. *Strout*, 117 Maine, 357.

While item 3 in terms disposes only of the $6,000 to the sister and $3,000 each to her children, grandchildren and great grandchildren, yet by reference and incorporation it is adopted as the conduit for the bulk of the estate in subsequent items, nine, twenty-two and twenty-three. Therefore it is necessary in this connection to consider the language of those items as revealing his purpose. The mode of expression differs slightly but the same and single thought runs through them all.

Thus in item nine he bequeathes "to the legatees mentioned in Section 3 of this will, consisting of my sister Mrs. Elizabeth M. Winchester and her descendants or their survivors, the library in my office and all the personal property therein including books, papers, desks, safe, tables, etc. It may be advisable eventually to

sell said library and divide the proceeds among said legatees or their survivors in equal shares. Or the law books might be sold and the other books be divided among said legatees as they may agree, or kept in the office for the benefit of all concerned including said Jeannette Winchester," wife of John H. Winchester. When penning these words Mr. Stewart evidently had in mind a time fixed and reasonably immediate at which the specified legatees or their survivors should receive the benefit of this gift. The books themselves might be divided in equal shares, or they might be sold and the proceeds divided equally, or a part might be sold and a part divided. Equality of division among the legatees named, or their survivors, was the dominant purpose. But equality of division presupposes a determined and fixed number when the division is made. If the class is to remain open and those who may be entitled to take must remain uncertain until the last great grandchild of Elizabeth Winchester may be born, however far in the future, then there can be no equal division until that time shall arrive and the number then surviving shall be ascertained. The dividend may now be definite, but the divisor and quotient must remain indefinite. In the meantime many of the descendants entitled to take at the testator's death might die before the birth of the last great grandchild, and the interests of the relatives whom Mr. Stewart knew and would naturally desire to provide for would be sacrificed to the interests of those remote collaterals whom he could never know or see.

Moreover he provides for an equal division of a part of the books "among said legatees as they may agree." Only those entitled to take could have the right to agree to a division and if the class was to remain open then no equal division by agreement could take place until the last great grandchild had been born and the class is closed. The language of Section 9 is clearly inconsistent with the idea of such a postponement and discloses a contrary intention on the part of the testator.

Look next at item 22. In this item Mr. Stewart sought to effectuate the wish of his brother Levi by distributing the residuum received from his brother's estate among various educational and charitable institutions, the total of these legacies as written amounting to $720,000. He authorizes his executor jointly with one Charles Morse of Minneapolis to sell and convey the Minnesota real estate, at such times and prices as they may deem advisable but as soon as

convenient and prudent for the payment of those legacies. He then adds this provision, which like item 9 already referred to indicates his own conception of the import of item 3: "If after the payment of the foregoing legacies to said Institutions by sales of said real estate as herein authorized, there should be a surplus or residuum of said real estate, it is to be sold in the same manner as above provided, and the proceeds divided equally between the legatees or their survivors named in item 3 of this will, unless a majority of said legatees, then of age, shall prefer to retain the same unsold." This surplus or residuum from sales of real estate amounts to about $800,000. Is it reasonable to suppose that the division of the proceeds here contemplated was to be delayed until the last great grandchild should be born, and that the decision as to sale or retention must be postponed until that time and then by a majority of those who might be of age at that time? We cannot accede to such a proposition.

Under item 23 the testator authorizes and empowers his executor and Mr. Morse to sell and convey all his own holdings of real estate in Minnesota, apart from those devised to him by his brother "at such times and prices as they may deem advisable, and divide the proceeds equally among the legatees named in Section 3 of this will, or their survivors, when payments are made."

Here he makes his intention clearer than in items 9 or 22. In those items he ordered the proceeds to be divided equally among the legatees or their survivors named in item 3 but did not specify in terms at what time the division should be made and survivorship should be fixed. In this item (23) he leaves no doubt on that point. He orders the division equally among the legatees named in Section 3 or "their survivors when payments are made." Those living when payments are made are to be the ultimate objects of his bounty, and at that time the equal division is to be made.

This takes us back directly to item 3, and the provision "their survivors when payments are made" in item 23 connects itself with and is explained by the directions as to payment in item 3, which are that the gifts of $3,000 each are "to be paid within two years after this will is admitted to probate, to those then living, and to those born afterwards, within two years from the date of birth."

In the light of the other provisions in the will we are now better prepared to construe the language of item 3, which at first seems some-

what ambiguous. Taking into account the context and the general plan which he had in mind, we construe item 3 as follows:

"To each of her children, grandchildren and great grandchildren now living." "Now living" means at the date of the will, at the time when the words were written. The general rule undoubtedly is that a will speaks from the date of the testator's death, but the language of a particular clause in the light of the circumstances may be such as to show that that clause speaks from its date. Such is the case here. In the next clause the testator himself fixes the meaning beyond doubt, when he says parenthetically "(17 now living)", and the record shows that at the date of the will seventeen were living, while eighteen were living at his decease. "Or hereafter born," is used in contradistinction to "now living" and means born after the making of the will; the word "born" is used in its broad sense to include both those actually born and living at the time of his decease and those then begotten and born within nine months thereafter. What follows refers to the time of payment, and here he makes a distinction between the two classes, thus: "to be paid within two years after the will is admitted to probate to those then living." "Then" is an adverb of time and might possibly refer either to those living at the time of probate, or at the time of payment. But the testator cleared the ambiguity in his mode of expressing the same thought in item 23, when he said "survivors when payments are made," so that payments to the first class he intended to be made to those surviving at the time of payment.

"And to those born afterwards within two years from date of birth." "Afterwards" was intended to apply to those en ventre sa mere at his decease and born within nine months thereafter, and they were to receive payment within two years from birth.

The record shows that there are no takers of the second class, as no descendants were born within nine months of Mr. Stewart's death.

This construction is in harmony with the testator's clear purpose to have his estate settled promptly. This is manifest throughout. · In item 6 a legacy of $3,000 each to three parties in the west is to be paid within two years after the will is probated unless personally paid during his life. In item 25 another legacy of $3,000 was to be paid within the same time. In fact the two year limit for the final settlement of his estate seems to have been his clearly defined purpose, and in order to further that result he anticipated all the gifts to institutions, and some to individuals, by paying them in his lifetime.

Had he intended to provide for collaterals to be born far in the future, he would doubtless have created a trust for that purpose. None is provided however.

Finally this interpretation is supported by the well established rule of construction, which has sometimes been called a rule of convenience, that limits the takers under such a general clause to those in esse at the death of the testator. Of course if the language of the will is unambiguous and clearly controverts such a construction, this rule cannot apply, but where there is ambiguity, as there is in the case at bar, the rule does have application.

This rule was first announced in *Ringrose* v. *Bramham*, 2 Cox, 384, where the gift was "to every child he hath." Those children born after the death of the testator were excluded, the reason given being "the extreme inconvenience of postponing the distribution of the testator's personal estate until all the children who might be born should be ascertained, which would not happen until the death of their respective parents." This principle of construction was followed in *Storrs* v. *Benbow*, 2 My. & K., 46, where the terms of the legacy were, "to each child that may be born to either of the children of either of my brothers lawfully begotten;" again in *Same* v. *Same*, 3 DeGex Mac. & G., 390; in *Butler* v. *Lowe*, 10 Sim., 317, the words being "to each of the children of nephews and nieces begotten or to be begotten;" in *Rogers* v. *Mutch*, L. R., 10 Ch. Div., 25, the words of the bequest being "the sum of 100 pounds to each of the children of my niece M. who shall live to attain the age of twenty-one years," and in *Dias* v. *De Livera*, L. R., 5 App. Cas., 123, where the terms were "children which may be procreated by the daughter." See also *Mann* v. *Thompson*, 18 Jur., 826. In all these cases children not in esse at the testator's death were excluded, the reason being that unless the contrary was clearly and unmistakably expressed it was improbable that a testator should desire to postpone the distribution of his estate so long. The case at bar falls within this rule of construction.

Our conclusion therefore is, concerning the $3,000 legacies in item 3, that they were vested in the eighteen descendants named in the record as living at the time of Mr. Stewart's decease, that those born after nine months from that time were excluded and that the rule against perpetuities was not infringed upon and need not be considered.

While the legacies vested as stated above, they were liable to be divested by death prior to the prescribed time of payment, as it was the survivors at that time who by the terms of the will were to receive the gift.

Several specific questions are asked under this paragraph, but the general interpretation which we have given is sufficient to answer them all without going into minute details.

II. ITEM 8.

"I give and devise to Jeannette Winchester of Corinna, the store and lot in St. Albans Village, occupied in part by O. W. Bigelow and in part by myself as my office. To have and to hold to herself, and to her heirs and assigns forever, Reserving, however, the rooms which constitute my office, as long as my executor and his successor may desire, in closing up my estate, and in taking care of my office library until the books and papers of all kinds, desks and personal property of every description are removed or disposed of, as hereinafter provided. Reserving also my said office rooms for the use of the legatees in Section No. 3 of this will as long as they may desire, And further reserving the stairs and woodshed underneath for the use of said office as long as said executor and his successor and said legatees may desire in the same manner as I have used them."

The court is asked to determine whether these reservations or any of them are valid and binding upon the estate devised to Jeannette M. Winchester; If so, which ones and to what extent.

The reservation to the executor, Mr. Merrill, and to his successor, Mr. Manson, is valid. It does not violate the rule against perpetuities because they were lives in being. Nor is the rule violated as to the reservation to the legatees, as we have already held in our discussion of item 3. The interest reserved is an easement in gross, merely a personal right which is neither assignable nor inheritable. 14 Cyc. Easements, Page 1140.

III. ITEM 9.

"I give and bequeath to the legatees mentioned in Section No. 3 of this will, consisting of my sister Mrs. Elizabeth M. Winchester, and her descendants, or their survivors, the library in my office and all the personal property therein including books, papers, desks, safes, tables, etc. It may be advisable eventually to sell said library and divide the proceeds among said legatees or in equal shares."

This item involves the same questions already considered and determined under item 3, and it is unnecessary to repeat our conclusions.

IV.  ITEM 11.

"I give and devise to Clossen C. Hanson and Florence M. Hanson, his wife, my homestead property, where I have lived with my dear wife many years.  To have and to hold to them and their heirs and assigns forever.  And to said Florence M. Hanson and her two daughters, Mary and Helen Hanson, I give and bequeath my dear wife's dresses, and articles of personal clothing, and apparel, and ornaments, and rings and watches, of which she had three (one in Blake's vault, Bangor, and two at home); and all of her personal property of every kind in my house, including everything inherited from her father and mother, and everything given her by relatives and friends and myself; unless some particular article is otherwise disposed of in this will.  All these things of hers are dear indeed to me and I desire said Florence and her daughters to keep and use them with care, in remembrance of my dear wife."

Three questions are asked concerning this item.  The first is whether the money described and listed in Exhibit B attached to the bill in equity was the property of the deceased wife of the testator.  This question we must decline to answer.  It is one purely of fact and is not within our province to answer in this proceeding for the construction of the will.

The second question is whether this money was disposed of by paragraph 11.  This assumes that it was the property of the testator.  Exhibit B contains a list of coins and currency found in different parts of the dwelling house, in bureaus, boxes, bags and a small tin trunk, the coins amounting to $210.43 and the currency to $233.88, a total of $444.31.  We do not think this was covered by the terms of this bequest.  It is not specifically mentioned and must pass if at all under the omnibus clause "and all her personal property of every kind in my house including etc."  But under the familiar ejusdem generis rule the enumeration of certain articles such as personal apparel, jewelry, ornaments, etc., restricts the general words to articles of the same class as those enumerated and does not include money, In re Gibbons est. 224 Pa. St., 37, *Andrews* v. *Schoppe*, 84 Maine, 170.  It was the evident intention of Mr. Stewart in this item to bequeath not money, but articles in the nature of keepsakes, valuable because of their personal associations and not of their pecuniary worth.

The third question is as to what becomes of the share given to one of the daughters, Helen, she having died during the lifetime of the testator. Ordinarily a tenancy in common and not a joint tenancy is presumed from a bequest of personal property to two or more persons individually named when the nature of the tenancy is not expressly indicated. *Stetson* v. *Eastman*, 84 Maine, 366. But this presumption may be overcome by the attending circumstances, and the different intention is manifest here. From the personal and intimate nature of the property itself and the tender reference to it made by the testator, and from the relation of the legatees to one another, being a mother and two daughters, dear friends of the deceased wife, the inference is clear that Mr. Stewart desired that these cherished articles should be kept together and treasured by the legatees as a class, as a family, and in the case of the death of any legatee that the survivors should take. It was a gift from heart to heart rather than from purse to purse. Our answer to this question therefore is that Helen having died, her mother Florence and her sister Mary should take as survivors. *Gilbert* v. *Richards*, 7 Vt., 203; *Blackmer* v. *Blackmer*, 63 Vt., 236.

V. ITEM 12.

"To said Clossen C. Hanson I give in trust for himself and wife and children as may suit the needs and wishes of each, the libraries in my house in rooms below and above and all books, magazines, papers, etc. and all articles of personal property in said house not herein otherwise disposed of; and also all personal property of every kind in my stable and buildings, not heretofore mentioned."

This is a valid trust. The fact that the father was one of the beneficiaries as well as trustee does not invalidate it. There is no rule of law which prevents a person from acting as trustee for himself and others. Perry on Trusts, Section 59; *Summers* v. *Higley*, 191 Ill., 193; *Tilton* v. *Davidson*, 98 Maine, 55. Nor is the gift void for uncertainty. Considering the nature of the property bequeathed it is difficult to see what more detailed and specific provisions the testator would be required or expected to make.

This being an immediate gift in trust to a class, those took as beneficiaries who were living at the testator's death, viz: Clossen C., Florence M., Glenn and Mary Hanson.

Exhibit C attached to the bill contains a list of the notes, mortgages, certificates of stock, contracts of sale of real estate and checks found

in the house at the testator's death. Their appraised value is $498,865.60, in addition to the coins and currency listed in Exhibit B already considered under item 11. The question is asked whether all or any portion of these securities passed under this item. For the reasons given in our discussion of item 11 we hold that this vast amount of property, forming nearly one-half of testator's entire estate, was not intended to be and was not included in the clause "and all articles of personal property in said house, not herein otherwise disposed of." By "articles of personal property" was meant goods and chattels, not money nor securities. In fact the learned counsel for the trustee and beneficiaries frankly disavow any such claim in their brief, so that further discussion is needless.

VI. ITEM 22.

This item disposes of the Minnesota property which came to David from his brother Levi. It contains legacies to a long list of institutions to be paid out of the Minnesota real estate and then provides that after such payment, the surplus or residuum is to be sold in the manner specified, that is by his executor jointly with one Charles Morse of Minneapolis, "and the proceeds divided equally between the legatees or their survivors named in item 3 of this will; unless a majority of said legatees, then of age, shall prefer to retain the same unsold."

The same questions are presented to us under this item as under item 3, and our answers need not be repeated. The same parties take as under that item and for the reasons already stated. We add that we think the power of sale given to the plaintiff therein is valid.

The question as to who holds the legal title to said real estate we deem it unnecessary to answer. It may depend upon the rules of law and the statutes obtaining in Minnesota where the land is situated. Moreover it is an academic rather than a practical question. It appears from the brief of counsel that the legatees prefer to have the property sold and the proceeds divided. Full power is given in the will to fulfil their desire. No further instructions are necessary.

VII. ITEM 23.

This item disposes of Minnesota real estate standing in the testator's individual name, independent of that coming to him from his brother. The same questions arise as in items 3 and 22, and the answers given in those items are applicable here.

VIII. Item.24.

"My real estate in Maine, not hereinbefore mentioned I hereby authorize and empower my said executor and his successor to sell and convey by. suitable deeds of conveyance and divide the proceeds equally between the same legatees named in Section No. 3. Sale or sales to be made when requested by legatees then of age." The answers in items 3, 22 and 23 cover this.

IX.

The final inquiry does not pray for the construction of any particular item in the will, but asks who is entitled to the undisposed residuum of the personal property belonging to the estate. This assumes that such an undisposed residuum exists, and to this we cannot accede.

Evidently Mr. Stewart did not intend to create such a residuum. If he had he would undoubtedly have inserted a residuary clause with which to take care of it. This he did not in terms do. There is no residuary clause, but he so framed his will that item 3 was made to perform somewhat the function of such a clause, at least to act as the conduit through which, or to legatees named in which, all his property was to pass except in the case of special gifts.

They were to share all his property otherwise undisposed of, and whether at his decease such property existed in the form of unsold real estate in Minnesota, devised to him by his brother, or the proceeds of such real estate sold by himself in his lifetime, or in the form of real estate in Minnesota standing in his own name or the proceeds thereof so sold by him, or unsold real estate in Maine, was entirely immaterial. It was all ultimately to be converted into cash and distributed as directed. He made ample provision for such sale, conversion and distribution. There has been no ademption of legacies except those paid by him in his lifetime. Those have been satisfied. But there has been no further ademption merely because Mr. Stewart· sold other real estate in his lifetime and received the proceeds. Such sale was not in contravention or revocation of any portion of his will, but strictly in accord with its entire plan. A legacy may be adeemed when the thing specifically bequeathed is essentially changed. But that is because the testator is supposed to have intended that result, and the gift is supposed to have been thus abrogated. Here however the sales by himself in his lifetime, as by his executor after his death, were made in strict harmony with his entire testamentary purpose, and in accord with the whole atmosphere of the document. His promises in the will were redeemed rather than adeemed.

Nor was there any partial intestacy. The presumption against it is always strong, especially where, as in this will, the testator takes pains to dispose of his property with the utmost care and detail, and such intestacy must have been farthest from Mr. Stewart's thought. Not one but all the living descendants of his sister were the selected objects of his benefaction and he gave suitable and effective expression to his wish.

In reaching these various conclusions we are confident that we have in each case discovered the actual intention of David D. Stewart as expressed in his will, and viewed in the light of all the circumstances, that that intention is not in conflict with any positive rule of law or fixed canons of interpretation, and can be legally carried into effect by the executor.

The parties were evidently justified in applying to this court for instructions and it is proper that the estate should bear the reasonable expense of the litigation. Reasonable counsel fees may be fixed by the sitting Justice and allowed in the executor's account.

*Bill sustained with costs.*
*Decree in accordance with the*
*opinion.*