\* THE VILLAGE OF BRATTLEBORO AND OTHERS *v.* LARKIN G. MEAD, FREDERICK Z. DICKINSON, AND MARY JANE DICKINSON.

[IN CHANCERY.]

*Will. Limitations. Charity. Parties.*

Under a provision in a will in respect to the property in dispute, as follows: "I give, devise and bequeath the same to my son Frederick Zelotes Dickinson, to have and to hold the same to him the said Frederick Zelotes, his lineal heirs and assignees forever; provided, however, if the said Frederick Zelotes shall die without lineal heirs, or upon the failure of his and my lineal heirs," that it be appropriated for the establishment and support of an industrial school in the village of Brattleboro, &c.; it was *held* that the limitation over for the establishment of the school is too remote, and is void both as to the personal property and real estate.

Whether the state's attorney would have been a proper party complainant or not, the orators, being the said village of Brattleboro and two parents of vagrant children in that vicinity, sufficiently represented the charity to warrant a decision of the case on the merits.

BILL IN CHANCERY. The bill alleges that the orators are the Village of Brattleboro, a corporation duly established under the laws of the state of Vermont, and situated in the town of Brattleboro, in Windham county, and James Herney and John Flood, parents of poor and vagrant children of said village of Brattleboro and vicinity, who bring this bill in behalf of themselves and all others interested in the establishment and support of an industrial school in the east village of said Brattleboro, as hereinafter particularly mentioned; that Zelotes Dickinson, late of said Brattleboro, but now deceased, in his life-time made and duly executed his last will and testament, in and by which, after disposing of a certain share of his property, real and personal, the rest and residue of the same was bequeathed by the testator in the words and figures following, viz:

"As to all the rest and residue of my property, real and personal, wheresoever and howsoever situated, I give, devise, and bequeath the same to my son Frederick Zelotes Dickinson, to have and to hold the same to him the said Frederick Zelotes, his lineal heirs and assignees, forever; provided, however, if the said Frederick Zelotes shall die without lineal heirs, or upon the failure of

his and my lineal heirs, it is my will that all the above property herein devised and bequeathed to said Frederick Zelotes shall be appropriated for the establishment and support of an industrial school in the east village of said Brattleboro, to be under the care and control of three trustees to be appointed by the court of chancery for the county of Windham ; and said trustees shall have power to appropriate a sum not exceeding four thousand dollars for the purchase of a farm and erecting the necessary buildings, in the vicinity of said village, for the purpose of said school ; but after the expenditure of said four thousand dollars, they shall be at liberty to expend the annual interest of said fund for the purpose of said industrial school ; and said trustees shall from time to time receive into said school such poor and vagrant children of the village of Brattleboro and vicinity as they may deem proper, and clothe, board and educate them and fit them to be useful members of society.    But the principal sum, after said expenditures of said four thousand dollars for the establishment aferesaid, shall be forever kept entire and unexpended, and the interest only used for said purpose ; provided, however, it is my will that in case of the failure of my lineal heirs during the lifetime of my said wife, she shall be entitled to the use of one half of the amount that is set apart for said industrial school during her natural life.    And in order to prevent the exercise of sectarian influence in the management of said school, it is my desire that the trustees above provided for be appointed, one from the Unitarian society, one from the Congregational society, and one from the Episcopal society, in said village, and that said three societies be forever represented in said board of trustees."

In the month of October, 1854, the said testator deceased, leaving surviving him his wife, Mary Jane Dickinson, and the said Frederick Zelotes, his lineal heir, then under twenty-one years of age, and on the 29th day of November, 1854, the will aforesaid was duly probated, and the said Mary Jane was duly appointed sole executrix of the same, and accepted said appointment, and entered upon the duties thereof.    Larkin G. Mead, of said Brattleboro, was duly appointed guardian of said Frederick, which appointment the said Mead duly accepted.    The provision made in said will for the said Mary Jane, in lieu of dower, was waived by her, and she took dower in the real estate of the testator, and an assignment of her portion of the personal estate. Said Mead, guardian of Frederick, has now in his hands personal

property amounting to about the sum of six thousand dollars, and real estate in his charge as guardian of about ten thousand dollars, situated in Brattleboro, which was conditionally bequeathed by the testator to Frederick, and which, by the terms of said will, would become the absolute property of Frederick's lineal heirs, at his, Frederick's decease, provided such heirs survived him. Frederick has now arrived at the age of twenty-one years, and claims that under and by virtue of said will he is entitled to said personal property and said real estate, with the right of disposing of the same, and has demanded of Mead, guardian as aforesaid, said property, and has commenced a suit against Mead to recover said personal property, which is now pending in Windham county court.

### PRAYER :

That the said Mead, or some other suitable person, be appointed to receive and manage said property under the order of this court, accounting for and paying out the proceeds thereof as this court shall direct. &c., and that the principal of said property, so conditionally bequeathed to the said Frederick, be kept and preserved, so that upon the happening of the contingency which shall justify its appropriation for the establishment and support of an industrial school as hereinbefore set forth, it shall be paid over to trustees for that purpose to be appointed by this court; and that this court will appoint three suitable persons to officiate as trustees, under the aforesaid will, of said industrial school; and that, in the mean time, the said Mead be enjoined from parting with any property now in his hands or subject to his control, which comes to his hands or is subject to his control by reason of his being guardian of the said Frederick, until the further order of this court; and that the said Frederick, his servants, agents and attorneys, be enjoined from prosecuting his present or any other suit to recover any portion of said property from said Mead, and from making any transfer of his title to any of said real or personal estate, until the further order of this court.

Frederick Z. and Mary J. Dickinson demurred to the bill; and Larkin G. Mead filed an answer submitting himself to such order as the court should make as to the disposal of the funds in his hands, and took no further part in the litigation.

At the September term, 1867, BARRETT, Chancellor, it was adjudged, *pro forma*, that said will did not give to and vest in the

said Frederick Z. the ownership and title of the property named in that part of said will above recited, but entitled him to have the income thereof.

It was therefore ordered that said Mead hold said property as trustee under this court, and manage and invest the same, &c., and that he pay over to said Frederick Z. such income as said Mead shall be chargeable with on an account to be taken, &c., said Mead to give a bond, &c., and that said suit remain open in this court for such orders as from time to time may behoove, and ultimately for a final order and decree for carrying into effect the provisions of said will, by the appointment of tustees and putting said property into their hands for the purposes specified in said will. And that said Frederick Z. be perpetually enjoined, &c., according to the prayer of the bill ; and no costs allowed to either party unless on final hearing and decree it be made chargeable on said property.

From this decree the defendants appealed.

*Field & Tyler, H. H. Wheeler, B. F. Fifield,* for the defendants.

I. The limitation over for the establishment of the school is too remote and void, and no one is entitled to claim anything under it. The testator could, by will, limit and control the disposition of his property during a life or lives in being, and twenty-one years and a fraction longer, and he could do no more ; and all that he undertook to do more is void. 2 Black. Com., 174 ; 4 Kent, 266 ; 2 Wash. R. P., 359 ; *Nightingale* v. *Burrill*, 15 Pick., 111 ; 2 Redfield on Wills, 845. In providing for this school he undertook to do more, both as to his real and his personal property. The two kinds of property stand on different footings in this respect, on account of our statute relating to entailments. A limitation over of real estate, after an estate which, but for the statute, would be an estate tail, is good, because the statute makes the estate a fee simple in the second taker in tail, if there be one, so that the limitation would either take effect or entirely fail at the death of the first taker, which would be within the legal limit ; but a limitation over of chattels after an estate tail, or an indefinite failure of issue, which is the same thing, is

void because the limitation might neither take effect or entirely fail for centuries, so that the property might be tied up much beyond the legal limit, to await the happening of the contingencies.

General Statutes, 446 ; 2 Redfield, 845 ; 1 Wash., 91, 92. In this case the limitation over of the real estate is void because the testator has created such an estate in Frederick as would have been an estate tail but for the statute, and then has undertaken to limit the property over until his own lineal heirs shall fail, after the estate of Frederick is exhausted. In considering this subject, the court should look at the contingencies, as the testator could look forward to them, without regard to what may have actually happened ; and unless the limitation *must* have taken effect, or have absolutely failed, within the legal limit after his decease, it cannot be upheld. 3 Green. Cruise, tit. 38, ch. 17, § 23 ; 4 Kent, 283 ; 15 Pick., 111 ; 2 Redfield, 849 ; 2 Wash., 359, 360 ; 3 Gray, 152 ; 8 Gray, 86 ; 29 Miss., 294, and cases cited.

II. That the limitation over of the personal estate is too remote and void would seem upon the authorities hardly to admit of a question. The doctrine that a limitation over by will of personal property, to take effect upon an indefinite failure of issue, is void, had long been settled in English jurisprudence when that system came to this country, and has remained unshaken in both systems ever since. Digest Earlier Chan. Rep., tit. Legacy V., pp. 202, 203, 204 ; Digest Modern Chan. Rep., tit. Legacy VI., pp. 306, 307, 308, 309 ; 2 Kent., 353 ; *Boucher* v. *Autram*, 2 Reports in Chancery, 65, A. D. 1672 ; *Deering* v. *Hanburg*, 1 Vernon, 478, A. D. 1687 ; *Richards* v. *Lady Bergavenny*, 2 Vernon, 324 ; Fitzgibbon's Reports, 320, A. D. 1695 ; *Gibbs* v. *Barnadiston*, Precedents in Chancery, 324, A. D. 1711 ; *Seale* v. *Seale*, 1 P. Wms., 290 ; Precedents in Chan., 421, A. D. 1715 ; *Stratton* v. *Payne*, 3 Br. P. C., 99, A. D. 1726 ; *Stephens* v. *Hide*, Ca. temp. Talb., 27, A. D. 1734 ; *Beauclerk* v. *Downer*, 2 Atkyns, 312, A. D. 1742 ; *Flanders* v. *Clarke*, 1 Ves. Sen., 9, A. D. 1748 ; *Butterfield* v. *Butterfield*, 1 Ves. Sen., 133, 154, A. D. 1748 ; *Earl of Chatham* v. *Tothill*, 7 Br. P. C., 453, A. D. 1771 ; *Glover* v. *Strothoff*, 2 Br. Chan. Ca., 33, A. D. 1786.

These doctrines were affirmed and applied in several other re-

ported cases during the time covered by the cases noticed. *Dingly* v. *Dingly*, 2 Freem., 40 ; *Burford* v. *Lee*, 2 Freem., 210 ; *Grey* v. *Montague*, 3 Br. P. C., 314.

Whenever the same questions have arisen, the same doctrines have been applied in this country. 2 Redfield on Wills, 657, 31, 377, 25, and cases cited. 1 Wash., 74 ; *State* v. *Mann*, 3 Har. & J., 238 ; *Stevenson* v. *Shriver*, 9 Gills & Johns., 324 ; *Hull* v. *Eddy*, 2 Green. R., 169 ; *Patterson* v. *Ellis*, 11 Wendell, 260. KENT, Ch. J., states the same rule as settled law in *Moffat* v. *Strong*, 10 Johns., 14, 15, also in 16 Johns., 409 ; 12 Cush., 382 ; 15 Pick., 104 ; likewise in *Fairchild* v. *Crane*, 2 Beasley, 105. Blackstone says chattels which savor not of the realty cannot be entailed. 2 Black., 89 ; 2 Kent, 353 ; 2 Redfield on Wills, 720.

The point decided in the foregoing cases is that the limitation after an estate tail of personal property is void, and the first taker takes the whole interest. The question as to whether the words " die without issue " mean an indefinite failure of issue, is merely incidental to the main inquiry as determining whether an estate tail is created *by implication*. The whole current of authority is, that these words do create an estate tail *by implication*.

But however that may be, the question does not necessarily arise in this case. *An express* estate tail is created by the first clause, to " Frederick Zelotes, his lineal heirs and assignees forever." The court is not called upon to imply anything. Nor is there a chance to say that the language of the first clause is limited or enlarged by the second clause, for the words " lineal heirs " are used in both.

Should it be claimed that the testator intended a definite failure of issue at the decease of Frederick, and that the limitation over to the school must either take effect or absolutely fail at the decease of Frederick, thus bringing the limitation within the legal limit, there are several answers to be made to such claim.

1. Here both real and personal estate are disposed of by the same words, and these words must have the same construction, in seeking after the testator's intention, as to both classes of property. *Hall* v. *Priest*, 6 Gray, 18 ; *Richards* v. *Lady Bergavenny*, 2 Vern., 324. As to the real estate they mean an indefinite fail-

ure of issue, beyond all question. *Jackson* v. *Billings*, 18 Johns., 368; *Fisk* v. *Keene*, 35 Maine, 349; *Jordan* v. *Roach*, 32 Miss., 483.

2. If no real property was disposed of by the same clause in the will, and the question was entirely new, the words are not susceptible of the construction that he meant a definite failure of lineal heirs at the decease of Frederick, for after providing if Frederick " shall die without lineal heirs," he goes further and adds " or on failure of his and my lineal heirs," excluding the possible conclusion that he meant a definite failure of heirs at the decease of Frederick. These words together mean an indefinite failure of lineal heirs of both the testator and Frederick Zelotes. The word *or* means the same as the word *and* would have meant. 1 Redfield on Wills, 484, § 15.

3. The construction that the words " die without lineal heirs " in the second clause mean a definite failure of lineal heirs is not consistent with the words " To Frederick Zelotes, his lineal heirs and assignees forever " in the first clause. These words in the first clause mean an estate tail, and necessarily import an *indefinite succession* of lineal heirs. If, then, the words in the second clause are construed an indefinite failure of lineal heirs, the two clauses harmonize ; otherwise, not.

III. Should the limitation over be held good as to the real estate, still there is no ground for any interference by the court of chancery as to that upon the allegations in this bill. Frederick has an estate for life in the lands. The words " to him the said Frederick Zelotes, his lineal heirs and assignees forever," would have given him estate in tail but for the statute of 1839. Under that statute he takes an estate for life. 2 Black. Com., 110, 113 ; 4 Kent, 11, 12 ; 1 Wash., 67–72 ; *Giddings* v. *Smith*, 15 Vt., 344 ; 32 Miss. R., 603 ; Greenleaf's Cruise, tit. 32, p. 357 ; General Statutes, 446, § 1.

IV. If upon any construction the limitation over for the establishment of the school can be upheld as a charitable use, the *present right* to have the property appropriated to the charitable use upon the happening of the contingencies must be vested *somewhere*. Case of Thetford school, Law Reporter, April, 1866,

319, note.   Upon the happening of the contingencies it would vest in the trustees which should be appointed by the court of chancery ; until then no provision is made by the will for it to vest anywhere.   The object of the charity is general, the whole public are interested in it, and so far as the right to have it established is concerned, all are equally interested.   2 Story Eq., § 1190.   In England the right would vest in the sovereign as *parens patriæ*.   In this country the sovereignty is in the people, in their sovereign capacity, and the right vests in them in that capacity.   2 Story Eq., § 1190 ; 2 Redfield, 793, 823 ; 3 Dall., 93 ; Story's Const., § 207 ; Mitf. Pl., 29.

In England all proceedings for the redress of injuries to and the protection of similar rights have to be prosecuted in behalf of the sovereign as trustee of the right, and the attorney general as representative of the sovereign is a necessary party to all such proceedings.   1 Story Eq., § 1190, n. 4 ; Mitf. Pl., 29 ; *Wellbeloved* v. *Jones*, 1 Sim. and Stu., 4 ; 1 Cond. Eng. Ch., 21 ; 1 Swanst., 291 ; *Moggridge* v. *Thackwell*, 7 Ves., 75 to 86 ; *Attorney General* v. *Middleton*, 2 Ves., 47 ; 4 Vin. Abr., 500.

So here such proceedings must be prosecuted in behalf of the sovereign people as trustees of the right, and the representative of the sovereignty must be a party to the proceeding.   In this case such representative would be the State's Attorney for the County of Windham.   3 Peters, 500 ; 2 Redfield, 824 ; *Attorney General* v. *Pearce*, 2 Atkyns, 87.   This case is clearly outside of the right to proceed in that form.

*H. E. Stoughton*, for the orators.

I.   1.   If it is assumed that the charity named in the bill cannot be established except upon information by the state's attorney of Windham county, then we say : *a.*—That the English authorities are full and explicit that a public charity may be established upon information *and bill.   The President and Scholars of Saint Mary Magdalen* v. *Sibthorp et al.*, 1 Russell, 154 ; *Attorney General* v. *Vivian*, Ib., 226 ; Mitford's Pleadings, 22–23 ; Story's Eq. Pl., 254, § 222.   *c.*—These authorities show that when it was deemed essential to make the attorney general a party, it was proper to

join the bill and information, and when that was omitted the court did not refuse to allow a bill to be amended by adding the information. If, therefore, the court find the state's attorney a necessary party, we should be allowed to amend by making him such.

2. Is the state's attorney a necessary or even a proper party to this proceeding? We insist not. *a.*—The English authorities which sustain this view arose under the statute of 43d of Elizabeth, which gave courts of chancery jurisdiction, not as courts of equity, but as administering the prerogative of the crown, the king being the parent and guardian of all charitable bequests. 1 Amer. Chan. Digests, 115–116, and authorities there cited. Informations in England to establish charities were unknown before such statute. 3 Vesey, Jr., 725. They had jurisdiction by virtue of their equitable and judicial powers. *Burr's Executors* v. *Smith et als.*, 7 Vt., 241 ; *Beatty & Richie* v. *Kurtz et al.*, 2 Peters, 584 ; *Inglis* v. *Trustees of Sailor's Snug Harbor*, 3 Peters, 113. The statute, so far as it relates to giving validity to charitable bequests, is in force here, but so far as relates to remedy, is not applicable to our institutions, and not in force. *Moore's Heirs* v. *Moore's Devisees*, 4 Dana, 359 ; *McCartee* v. *Orphan Asylum Society*, 9 Cowen, 481–2. It is never essential to have the attorney general a party, unless for want of other parties capable of sueing. *b.*—The powers of a court of chancery are made by our statute, Gen. Sts., 248, § 27, co-extensive with the courts of chancery in England, with such exceptions, additions and limitations as may be imposed by the constitution and laws of this state. This would give them jurisdiction of charities, independent of the statute of Elizabeth, by virtue of their equitable jurisdiction, and not by virtue of any prerogative which requires charities to be administered upon information instead of bill.

II. 1. The forty-first section of the constitution declares that religious societies or bodies of men united or incorporated for charitable purposes shall be protected in the enjoyment of their privileges, immunities and estates, &c., &c.

2. A court of chancery will sustain a bequest of personal and real property to charitable uses, if the same is not against local laws or public policy, and is capable of being carried into effect

according to the intent of the donor. *Potter* v. *Chapin*, 6 Paige, 639; *Beatty et al.* v. *Kurtz et al.*, 2 Peters, 584; *Inglis* v. *Trustees of Snug Harbor*, 3 Peters, 113; *Town of Pawlet* v. *Clark et al.*, 9 Cranch, 291; *Executors of Burr* v. *Smith et al.*, 7 Vt., 241; 2 Kent, 286, n. c., full on this subject. And the gift will be sustained, notwithstanding the persons to carry it into effect are not incorporated, and the objects vague and indefinite. *The Baptist Association* v. *Hart*, 4 Wheaton, 1; *Stone's Executors* v. *Fuller et al.*, 3 Vt., 400. And if the trustees fail to execute the trusts, the heir-at-law may hold in trust, or they court may appoint new trustees. 3 Vt., 400. And even notwithstanding the person to take it is not *in esse.* 9 Vesey, 399; 2 Kent, 288, n. a.

III. The orators are the proper parties complainant. *Wright* v. *Trustees of the Methodist Episcopal Church*, 1 Hoffman's Ch. R., 202, and authorities above cited.

IV. 1. The rule that a remainder may be limited after a life estate in personal property is as well settled as any principle at law. *Hughs* v. *Sayer*, 1 P. Williams, 534; *Atkinson* v. *Hutchinson*, 3 P. Williams, 260; *Crook* v. *DeVandes*, 4 Ves. Jr., 197; *Butterfield* v. *Butterfield*, 1 Ves. Sen., 153; *Lord Douglas* v. *Chalmer*, 2 Ves. Jr., 501, and note a.; *Fourth* v. *Chapman*, 1 P. Williams, 663; *Lampley* v. *Blower*, 3 Atk., 396; *Smith* v. *Bell*, 6 Peters, 68; *Williamson et al.* v. *Daniel et al.*, 12 Whea., 568; 4 Kent Com., 281, and n. 283, (5th edition.)

2. It is equally well settled that the intent of the testator is the polar star to direct in the construction of wills, and it has been held that when the bequest gave the possession of personal property to the first taker with power to use or even dispose of it, a remainder was valid. *Upwell* v. *Halsey*, 1 P. W., 651; *Smith* v. *Bell*, 6 Peters, 68; *Williamson et al.* v. *Daniel et al.*, 12 Whea., 568.

3. An absolute bequest of personal property is qualified by a limitation over. *Williamson et al.* v. *Daniel et al.*, 12 Whea., 568; *Smith* v. *Bell*, 6 Peters, 68, § 4, of n. 1; 1 Vesey Jr., 195; *Hughes* v. *Sayer*, 1 P. W., 534; *Atkinson* v. *Hutchinson*, 3 P. W., 260. See also 2 Kent, 352, and authorities there cited.

V.   A will must be so construed as to give every part of it effect, if it can be consistent with law and with the intent of the testator.

VI.   We now proceed to consider the construction of the will under consideration in this cause, bearing in mind that every word of the will is to have its effect, and if two parts of the will are not reconcilable, the latter must be·taken as the testator's final intention on the subject.   *Blake* v. *Banbury*, 1 V., 194 ; *Constantine* v. *Constantine*, 6 V., 102 ; 5 V., 247.

a.—It is said that the devise " to Frederick Zelotes, his lineal heirs and assignees forever," implies a power of sale.   But such words are restrained and qualified by the limitation over.   1 P. W., 651 ; 6. Peters, 68 ; 12 Wheat., 568 ; or else you totally disregard the words of the proviso, and give no effect to them.   Full effect may be given to these words, by applying them to the lineal heirs of the said Frederick, when they shall become possessed of the property under the will.   That is, if the said Frederick shall, at his decease, have lineal heirs, they and their assigns are to take *forever*.

b.—But it is said, how can the assignees of Frederick take *forever*, if there is a remainder over ?   We are seeking for the intent of the testator, and how can it have been the testator's intent to give Frederick the power of sale with remainder over ?   Are these words " *assignees* " and "*forever* " to satisfy the court that it was the intent of the testator to give the absolute disposition of this property to Frederick, and is the remainder over to be construed to mean that it was to take effect in case said Frederick died without lineal heirs, *and did not dispose of said property ?* are words to be *supplied* to make the limitation void ?   Words may be *supplied* and *deducted* to carry out the intent, but not to defeat it.   It is more reasonable to say that these words are to have effect, and be applied to the property in the hands of Frederick's lineal heirs, should he leave such heirs at his decease.   This leaves Frederick entitled to the use, and gives full effect to these words, and to the limitation over.

c.—It is said that the words " *Provided if the said Frederick die without lineal heirs* " import not the failure of heirs at said

Frederick's decease, but an indefinite failure and too remote, and hence the limitation over is void. We insist that the words import a failure of heirs at the time of Frederick's decease, and hence the limitation over is good.

*d.*—But they say the will does not stop there, for it says "if the said Frederick shall die without lineal heirs, *or on default of his and my lineal heirs,*" then over, and it is insisted that the word " *or* " in wills is read " *and* " if necessary to give effect to all the words. This shows that courts are anxious to carry out the testator's intention, and for the purpose of doing it will even reject some words and supply others.

*e.*—But will they supply one word for another for the sake of defeating the remainder over ? Now it is apparent that the words " *or on failure of his and my lineal heirs* " refer to the time of the decease of Frederick, and the defendants are aware of this by substituting the word " and " for " or," which lends some plausibility to their argument.

We therefore say, that it is apparent from the will itself and the surrounding circumstances shown by it, that the testator intended to give his son Frederick a life interest in the real and personal property, with remainder over for the charitable purposes therein named, in case there should not be living any lineal heirs of the testator or the said Frederick, at the decease of the said Frederick. Such a disposition of personal or real estate is not against any local law or public policy, and will be sustained by the court.

The opinion of the court was delivered by

PECK, J. The question upon the merits argued by counsel is as to the validity of the devise over for the establishment and support of an industrial school. It arises upon the part of the will in which the testator, as to the property now in dispute, says : " I give, devise and bequeath the same to my son, Frederick Zelotes Dickinson, to have and to hold the same to him the said Frederick Zelotes, his lineal heirs and assignees forever ; provided, however, if the said Frederick Zelotes shall die without lineal heirs, or upon the failure of his and my lineal heirs," that it be appropri-

ated for the establishment and support of an industrial school, &c. The counsel on both sides agree that, by force of our statute on the subject of entails, (Gen. Sts., ch. 64, § 1,) the testator's son Frederick, as to the real property, takes by the will an estate for his natural life only ; and that as to the property, both real and personal, the devise over in trust for the establishment and support of an industrial school is contingent, and cannot vest, if ever, till the happening of the contingency upon which, by the terms of the will, it is made to depend ; a contingency which may or may not ever happen.

It is insisted on the part of the defense, that the limitation upon which the devise over to the purposes of the school is by the will made to depend, is the indefinite, unlimited failure of lineal descendants, whenever that contingency may happen, whether at the death of Frederick, or at any indefinite, unlimited time thereafter in the course of future generations, however remote ; and that as the contingency may happen after the legally required period, that is, after the termination of a life or lives of a person or persons in being at the death of the testator, and twenty-one years, and a sufficient fraction of a year more to cover the period of gestation, the limitation is too remote, and for that reason the devise over to the school void. The orators' counsel, without denying this legal proposition if the devise is construed as depending on an indefinite failure of lineal descendants, contends that such is not the meaning of the will ; but that the limitation has reference only to a definite failure of lineal descendants *at the time of the death of Frederick;* and that if at his death he has no lineal descendants living or in being, the devise over to the school takes effect ; and that if at his death he has such lineal descendant or descendants, the devise over fails and can never take effect, however soon thereafter such lineal descendants may become extinct. If this latter construction is the true one, the limitation is not claimed by defendant's counsel to be too remote. Upon this question of construction it is not necessary to enter into an examination of the multitude of cases on the subject, in which the question has arisen whether the words *die having no issue, die without issue, die leaving no issue, die without heirs of his body, dying*

*without issue*, and similar words, import a definite failure of issue of the person at the time of his death, or import an indefinite, un-limited failure of issue or lineal descendants, and upon which there has been so much discussion and contrariety of opinion among eminent jurists.   If the question in this case depended solely upon the words " *shall die without lineal heirs*," an exam-ination of the authorities above alluded to might be deemed nec-essary.   Looking . at these words alone, without reference to authorities on the subject, there would seem to be some reason for saying that Frederick would not die without lineal heirs, if he had lineal heirs living at the time of his death that survived him, even if the line became extinct afterwards ; yet there are many decisions upon similar words to the contrary.   But the tes-tator did not leave his meaning to be gathered from these words alone, but has furnished his own interpretation by the subsequent words, " *or upon the failure of his and my lineal heirs*."   If the words " *shall die without lineal heirs* " had not been inserted, and the limitation had been expressed simply by the words " *upon the failure of his and my lineal heirs*," there could have been no ground to claim that it had reference solely to the failure at the time of the death of Frederick.   If the words " *shall die without lineal heirs*," standing alone, unexplained, would be confined to a want of lineal heirs at the time of the death of Frederick, and were so understood by the testator, it is evident that the subse-quent and more general and comprehensive words were added to enlarge the meaning and extend the contingency to any subsequent failure, as well as to a failure at the time of such death.   But if the former words should be construed as comprehending an indefi-nite failure of lineal heirs, then it is obvious that the subsequent explanatory words were inserted to make that meaning more clear, and to remove any doubt that might otherwise be raised upon the preceding words.   It is not necessary to this construction to say whether the testator in these latter words intended by the expres-sion " *my* " lineal heirs to have reference to any lineal heirs of his own except such as he might have through Frederick ; for even if he did not, the contingency in a legal sense would be equally remote.   If he did so intend, it argues in favor of this

72

construction. Nor is it material to this construction to convert, as the defendant's counsel do, the word " *or* " into *and*, preceding the words " *upon the failure of his and my legal heirs.*" It answers the purpose of showing the devise over to depend on an indefinite failure of lineal heirs or descendants, whether it is read in the disjunctive or conjunctive. Words in a will, under the English law, which would create an estate tail if used in reference to real estate, give an absolute title to the first taker when applied to personal property, although a contingent interest in personalty may be created by limitation over after a preceding estate, to operate by way of executory devise. The objection that the limitation over is too remote is applicable to the devise of the personal property as well as the real estate, and renders it void as to both alike.

Whether the state's attorney would have been a proper party to have joined in the prosecution or not, we consider the interest of the charity sufficiently represented to warrant us in deciding the case as we do, on the merits.

The decree of the court of chancery is reversed, and cause remanded, with directions to that court to make decree dismissing the bill without costs except costs in this court.