IN RE OLIVER WELLS'S ESTATE, LUCIA R. WARD, apt.

Heard, May Term, 1896.   Decided, May Term, 1897.

Present:  Ross, C. J., TAFT, TYLER, MUNSON, START and THOMPSON, JJ.

*Devise not Void for Remoteness—Estate Tail—Judgment a Bar.*

The testator, being advanced in years and having only one child, a married daughter, devised the use of his property to his widow during life, then to his daughter during life, and provided that upon her decease, after the death of his wife, the fee should vest in the heirs of his daughter's body and in default of such heirs, or in case the testator "should at any future time fail to have heirs of his body," then the fee should vest in a religious society.   No provision was made for any heirs of the testator except those to come through his daughter.   *Held*, that the devise to the society was not void for remoteness, the intention plainly being that it should vest upon the termination of the two life estates without heirs of the daughter's body surviving.

The widow having deceased, the probate court decreed to the daughter the life use of the estate.   *Held*, that the decree amounted to a denial of her right to the fee and being unappealed from is conclusive against her.

The decree of the probate court unappealed from, between the same parties, upon the same facts, is as conclusive as a judgment of this court.

Moreover the decree was correct, for the daughter could in no event take more than a life estate.

It is immaterial that no decree has ever been made touching the fee, for the time for such a decree has not arrived.   Upon the death of the daughter the fee will be decreed to the heirs of her body, if there be any, otherwise, to the society.

APPEAL from a decree of the Probate Court for the District of Chittenden, dismissing the petition of the

appellant, praying to have the estate finally decreed to her. Pleas, the general issue and in bar. Traverse and replication. Trial by court at the March Term, 1896, Chittenden County, *Rowell*, J., presiding. Petition dismissed with costs. The appellant excepted.

*S. C. Shurtleff* and *J. J. Monahan* for the appellant.

The decree giving the petitioner the life use of the estate is not inconsistent with her present claim. No decree was made affecting the reversion, and it does not appear that any such question was raised. It is only matters of record that are concluded. *Rix, admr.,* v. *Heirs of Smith,* 8 Vt. 365; *Heirs of Smith* v. *Rix, admr.,* 9 Vt. 240; *Sparhawk* v. *Buell,* 9 Vt. 41; *Davis* v. *Eastman,* 66 Vt. 651.

The devise over is void for remoteness. *Village of Brattleboro* v. *Mead,* 43 Vt. 556. It depends upon an indefinite failure of lineal heirs and is not limited to a failure of heirs of his daughter's body. The rule against perpetuities is that the contingency must happen within a life or lives in being and twenty-one years and the period of gestation thereafter. Gray on Perpetuities, § 214; I Jarm., Wills, p. 255. The words, "die leaving no heirs of her body," mean that if the donee shall die before the donor, leaving no heirs, etc., the property shall pass according to the conditions. *McCormick* v. *McElligott,* 127 Pa. 230: 17 Atl. Rep. 896; *Webb* v. *Lines,* 57 Conn. 154: 17 Atl. Rep. 90; *Richardson* v. *Richardson,* 80 Me. 585: 16 Atl. Rep. 250; *Fisk* v. *Keene,* 35 Me. 349.

*L. F. Wilbur* and *Charles T. Barney* for the defendant.

Ross, C. J.  On February 15, 1895, the appellant, Lucia R. Ward, preferred her petition to the Probate Court for the District of Chittenden, setting forth that she is the daughter and heir at law of Oliver Wells deceased, and legatee under his will, and that she is advised and believes that the Congregational church of Underhill has no interest in the estate under the provisions of the will; that the limitation

or devise over to it is too remote and void; and that upon the death of Rebecca Wells all the estate vested in her absolutely.    She prays that a decree may be made accordingly.    The court appointed a time for hearing the petition, and gave due notice thereof.    On the day appointed the Congregational church appeared and filed a motion to dismiss the petition, assigning, among other reasons, that the petitioner was concluded by a previous adjudication of the court, and that the will was not void as to the Congregational church for remoteness.    Upon appearance and hearing, the probate court dismissed the petition.    From this decree the petitioner appealed to the county court.    In the latter court the Congregational church pleaded the general issue, and seven special pleas in bar, all of which set up as conclusive upon the appellant, and in bar of her application, a decree of the probate court made December 19, 1890, on the settlement and distribution of the estate of the testator.

The appellant joined issue on the general issue, and replied *precludi non* to the special pleas because she says that the property mentioned in her petition, consisting of both real and personal estate, has never been finally decreed to her, nor to the church, nor to any other person, or corporation, whatsoever, by the probate court, which alone has jurisdiction to make such decree, and that title to the property is uncertain.    The replication was traversed, and the trial was by the court.    On the trial, the court found that the decree of the probate court of December 19, 1890, and the portions of the will of Oliver Wells material to the issue, are correctly set forth in the third and fourth special pleas; that by that decree the appellant was given the use of the residue of the estate during her natural life, and that the fee of the residue was not thereby decreed to any one, nor has it been since then.    On these findings the county court rendered judgment dismissing the petition of the appellant against her objection and exception.    The material facts set

forth in the pleas found to be true are that Oliver Wells deceased testate in 1887; that his will was duly probated; that by his will he gave the use of all his estate, first, to his wife, Rebecca Wells, during her natural life, secondly, at her decease, to his only daughter, the appellant, and the reversion to the heirs of her body; "and should my beloved daughter, Lucia R. Ward, die leaving no heirs of her body, or shall I, at any future time fail to have heirs of my body," then the real and personal property, constituting his estate, is given in fee simple to the Congregational church at Underhill Flats.   This gift to the church has a condition in regard to its use by the church, and then the will proceeds: "The said church is not to have any interest in the aforesaid real estate and personal property until after the decease of my beloved wife, Rebecca Wells, and my beloved daughter, Lucia R. Ward; and is not then to have any interest in it, unless my said daughter dies leaving no heirs of her body." The pleas further set forth that after probating the will, and after the executor had rendered his final account and had it settled, and after finding both what estate was left and that Rebecca Wells had deceased, on due notice, and appearance of all parties interested, on December 19, 1890, the probate court, "pursuant to the last will and testament of the deceased, and the laws of this State," did decree to Lucia R. Ward, the petitioner, the use of the residue of the estate, during her natural life.   This decree was not appealed from by any of the parties and is now in full force.

(1)   The first contention is whether it precludes the petitioner from the relief sought through her petition.

December 19, 1890, the probate court had the subject matter, the estate of Oliver Wells, and the parties interested therein before it.   It had full jurisdiction to determine, and it was its duty to determine correctly, the rights of the petitioner in and to the estate, and to make a decree thereof. If the devise to the Congregational church is now void under the law against perpetuities, it was so then.   If the

petitioner is now entitled to have the estate decreed to her in fee, she was so entitled then. Hence the identical subject matter brought before the probate court by this petition and all facts relevant thereto were then before it for determination and decree. By its decree she was given only a life estate, in the property, under adjudication. If she was then entitled to have that property decreed to her in fee, she was, by the decree, deprived of that right. A decree of the estate to her then or now in fee would operate to vacate and set aside the decree then made. A decree of the estate to her now in fee would collaterally attack and vacate the decree then made. It would cut the bond then placed around the property of the estate by which she could only enjoy its use, during her life, and give her title, dominion, and absolute control of the property. By that decree she was deprived of the enjoyment of the fee, dominion and absolute control of the property. Being deprived of a right in the property which she now claims, she could have appealed from the decree and had it corrected, if erroneous. The decrees of the probate court, made, in matters, and against parties, within the sphere of its jurisdiction, not appealed from, are conclusive upon those to whom the right of appeal is given. *Collard* v. *Crane*, Brayt. 18; *Judge of Probate* v. *Fillmore*, 1 D. Chip. 420; *Giddings* v. *Smith* 15 Vt. 344; *Lawrence* v. *Englesby*, 24 Vt. 42. Nor can such decrees be attacked, or impeached collaterally in the probate court, or in any other court. *Rix* v. *Smith*, 8 Vt. 365; *Lawrence* v. *Englesby*, 24 Vt. 42. *Driggs* v. *Abbott*, 27 Vt. 580; *Abbott* v. *Coburn*, 28 Vt. 663; *Richardson* v. *Merrill*, 32 Vt. 27; *Robinson* v. *Smift*, 3 Vt. 283; *Probate Court* v. *Vanduzer*, 13 Vt. 135.

The petition brought before the probate court no facts which were not before it when it made the decree of December 19, 1890. The same parties were then before the court which the petition brought before it. It has always been held, that the decisions of this court, on the same facts

and between the same parties are conclusive, when the case comes a second time before the court. *Ross* v. *Bank of Burlington*, 1 Aik. 43; *Dana* v. *Nelson*, 1 Aik. 252; *Herrick* v. *Belknap*, 27 Vt. 673; *Stacy* v. *Vermont Cent. R. R. Co.*, 32 Vt. 551; *Barker* v. *Belknap's Est.*, 39 Vt. 168; *Childs* v. *Ins. Company*, 56 Vt. 609; *St. Johnsbury, etc., R. R. Co.* v. *Hunt*, 59 Vt. 94. This doctrine is applicable to the decrees of the probate court made within its jurisdiction. Nor is the result changed by the finding of the county court that no final decree, in regard to the fee of the property had been made by the probate court. By the terms of the will the time had not arrived when the probate court could determine in whom the fee of the property vested absolutely. That time will not arrive until the death of the petitioner. If then there exist heirs of her body the fee will be ascertained to be vested in such heirs. Although no persons now exist who would constitute heirs of the petitioner's body, the possibility of such heirs coming into existence is not precluded until the death of the petitioner. If no such heirs then exist, it will be for the probate court to determine whether the conditional executory devise to the Congregational church is void under the rule against perpetuities, and if so, to decree the property in fee to the heirs of the testator; and if not void, to decree it to the Congregational church under the provisions of the will. This is the scope of the decree of the probate court of December 19, 1890, and it is correct.

The terms of the devise to the petitioner create what, at common law, would be an estate in fee tail, (*Giddings and wife* v. *Smith*, 15 Vt. 344) which under V. S. 2201, and which before the statute, gave the petitioner a life estate only in the premises. *Giddings and wife* v. *Smith* was three times argued, carefully, and fully considered, and has ever since been followed. *Village of Brattleboro* v. *Mead*, 43 Vt. 556; *Thompson* v. *Carl*, 51 Vt. 408; *Doty and wife* v. *Chaplin*, 54 Vt. 361; *In re Kelso's Est.*, 69 Vt. 272. Hence the decree of December 19, 1890, was correct so far as

concerns the petitioner. She has no interest in the question whether the contingent executory devise to the Congregational church is void or not. That question will never arise if she dies leaving heirs of her body. If she leaves no such heirs, at her decease, it will be a question between the then heirs of the testator and the Congregational church.

(2) But if there is any doubt in regard to the finality and correctness of that decree, the construction placed upon the will by the decree of December 19, 1890, gives effect to the intention of the testator. His intention is to be ascertained from a careful consideration of all the provisions of his will, read in the light of existing circumstances. By the will, the testator has provided, in very explicit terms, that, after the termination of the life estate therein given to his widow, a life estate shall be created in the property "to my only and beloved daughter" with remainder "to the heirs of her body." He then proceeds to say, "and should my beloved daughter, Lucia R. Ward, die, leaving no heirs of her body, or should I, at any future time fail to have heirs of my body, then it is a part of my will and testament" that the property in contention shall be the propety of the Congregational church, to be used for the purposes specified. If the words, "or should I, at any future time fail to have heirs of my body," had been omitted, it is not seriously contended that the devise over to the Congregational church would have been void for remoteness. The language used in the first clause, "die leaving no heirs of her body," import that the time when, if ever, the estate is to pass to the church is at the decease of the petitioner. If then she had an heir or heirs in the descending line, child or grandchild, living, such heir or heirs take the property and the church takes nothing. If, at that time, she left no such heir, the Congregational church takes the property. In such case, it is conceded that the devise over would not be defeated by reason of remoteness. But it is contended that the addition of the words, "or should I at any future time fail to have heirs of my

body," creates such remoteness under the decision of *Village of Brattleboro* v. *Mead*, 43 Vt. 556, as to defeat the devise to the Congregational church.

In that case, and generally, it is held, that the intention of the testator in regard to the remotest time when the devise over shall take effect, determines whether such remotest time is within the rule against perpetuities; and that his intention in this respect is to be ascertained from all language of his will on the subject, read and construed in the light of existing, surrounding circumstances, independently of whether it will bring that time within, or without, the time limited by the rule against perpetuities. These circumstances existed when the testator made his will. The testator and his wife were well advanced in years. He had one only child, grown to womanhood and married. He expected his wife might outlive him, for he made provision for such a condition. Under these circumstances it is hardly reasonable to construe the language, "or should I, at any future time fail to have heirs of my body," as relating to any other such heirs than those who might thereafter exist in the line of his only married daughter. In creating the life estate to that daughter the remainder is "to the heirs of her body." He makes no devise to the heirs of his body in any other descending line. By his will he evidently intended to die testate in respect to all his property. But he devises a life estate to the daughter, and makes it take effect subsequently to the life estate which he has therein devised to his wife. It may have occurred to him, that his daughter might die leaving no heir of her body in his lifetime, or in the lifetime of her mother; or if she died leaving a child, the child might die during his life, or during the life of the grandmother; and he added these words to provide for such a contingency, but not thereby intending to defeat the conditional devise to the Congregational church, on the, to him, impossible supposition, that another line of heirs of his body than through his only married daughter might

come into existence and need to be provided for. He did not attempt to provide for any such heirs. However, the two clauses of the will, already quoted, might be construed, if they were all the will contained on this subject, we think, the other provision of the will, on this subject, confines the testator's intention and meaning, in using the words in regard to the heirs of his body, to that we have given them. He evidently feared that if the petitioner should die childless during the continuance of the life estate of his wife, the devise over might cut short her life estate. For in a subsequent sentence he is careful to say, "The said church is not to have any interest in the aforesaid real estate and personal property until after the decease of my beloved wife, Rebecca Wells, and my beloved daughter, Lucia R. Ward, and is not then to have any interest in it unless my said daughter dies, leaving no heirs of her body." Here again he fixes the time when the devise to the church shall take effect as of the time when his daughter shall die, leaving no heirs of her body, if that shall ever happen, but in no event until the two life estates are terminated. Here he says nothing in regard to the failure of the heirs of his body, although he is endeavoring definitely to fix the time when the contingent remainder shall vest in the church, if ever. Neither does he speak of any other line of heirs coming to an end except that which shall descend through the petitioner.

This must be the construction to be placed upon this will. The will became operative and spoke as of the time of the testator's death. At that time the heirs of his body were determined. His only daughter, the petitioner, was such sole heir. No other such heirs could come into existence, certainly except through her. When, therefore, the testator, in his will, speaks of the heirs of his body, he designates the petitioner, and,—if any others,—such heirs as descend through her. When, in his will, he says "Or shall I, at any future time fail to have heirs of my body," he means his only daughter, or, at most, such, and only such, as may descend

from her. Hence, when, in his will, he says, "And should my beloved daughter, Lucia R. Ward, die, leaving no heirs of her body, or shall I, at any future time fail to have heirs of my body," he speaks of only one line of heirs descending from his body ; and, when he says that if this line of heirs does not exist at the death of this daughter, then the Congregational church shall take the property in fee, he fixes a time for the church to take, that is within the time limited by the rule against perpetuities. On the happening of the condition named, the devise over to the Congregational church will be ascertained to be operative and to have taken effect. Hence, considering all the provisions of the will, read in the light of existing circumstances, the remotest time at which the testator intended the contingent remainder devised to the church should vest and be determined to have vested, if it ever did, was at the termination of the life estate devised to the petitioner, if she outlived her mother, and came into it; but if the mother survived her, then upon the termination of the mother's life estate; dependent upon whether at such time there was then living one or more heirs of the body of the petitioner, and therefore heirs of the body of the testator. If such heir, or heirs, were then living, that fact would determine that the remainder or fee of the property had vested in them; otherwise in the Congregational church.

*Judgment affirmed and ordered certified to the probate court.*