IN RE PECK'S ESTATE.

                   May Term, 1922.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

                Opinion filed October 11, 1922.

*Perpetuities—Manner of Determining Whether Provision Within the Rule—Wills—Presumption of Legality—Codicil— "Heirs"—When Distribution of Principal of Trust Fund Properly Refused—"Seized" and "Possessed"—Interest on Legacy.*

1.  No future interest in property is valid unless it must vest not later than twenty-one years (and the period of actual gestation) after some life in being at its creation.

2.  Whether a provision in a will violates the rule against perpetuities, depends not upon what has transpired, but wholly on what might have happened looking forward from the time when the will took effect, which test is not applied until after the instrument has been construed, but then the question is to be determined by the remotest time when by any possibility the gift over may take effect.

3.  The law presumes that a testator intended to give his will a meaning that will make it legally effective, and favors a testamentary construction that vests the estate; and if two constructions are fairly open, one of which will turn a bequest into an illegal perpetuity, and the other will make it valid and operative, the latter should be preferred.

4.  Where a codicil revoked a portion of certain trust provisions in a will, relating to the testator's niece and his two nephews, and provided that in the event of the death of the niece prior to such other beneficiaries, or either of them, the share of income

theretofore paid to her should thereafter be paid to "her heirs," and that upon the death of the other two beneficiaries respectively the share of income theretofore paid to such deceased beneficiary should thereafter be paid to said niece, "if she be surviving,—otherwise to her heirs," the use of the words "her heirs," without more, indicated that the testator did not intend to extend the trust indefinitely in violation of the rule relating to perpetuities; the word "heirs" being ordinarily used to designate those persons who answer to that description at the death of the ancestor, and that the purpose of the codicil was to provide for a disposition of such niece's share of the income during the interval between her death and that of the nephews or the surviving nephew,—in case she failed to outlive them.

5. Under the foregoing circumstances, where such niece survived the testator and the other beneficiaries and was still living, the time for decree of the principal of the trust had not yet arrived, and it was proper for the court to refuse to make such distribution and to direct the trustee to apply, at the death of such niece, for directions in relation thereto, when it would be a proper subject for consideration and decree of the probate court.

6. Where a codicil recited that the testator had given a certain person a legacy of $5,000, and that if testator died "seized and possessed" either of that portion of the estate of his late wife, provided for him as husband under the statute upon waiver of the provisions of her will, or one-third of the residue of said estate under an agreement therefor, then the legacy to such person should be increased by the sum of $5,000, the terms "seized" and "possessed" were used, not in their strict, literal, common law sense, but in reference to all sorts of property ownership, and it was the intention of the testator to increase the legacy in case he died the owner of the interest specified.

7. Where, at the death of a testator, his estate inventoried about $12,500 and was deeply involved in litigation which did not end until more than 12 years later, and no decree had been made by the probate court, an executor was justified in deferring payment of a legacy to himself of $10,000, until the result of the litigation was known, and hence the allowance of interest thereon was proper.

APPEAL from a decree of distribution made by the probate court for the District of Chittenden. Trial by court, upon an agreed statement of facts, at the September Term, 1921, Chittenden County, *Wilson, J.*, presiding. Judgment affirming the decree of the probate court. The appellants excepted. The opinion states the case. *Affirmed.*

*Theo. E. Hopkins* for appellants.

*Max L. Powell* for Nichols' Estate.

*Douglas Campbell* of New York City for Katherine Keyes Peck and others.

POWERS, J. This is an appeal from a decree distributing the testate estate of Edward W. Peck, late of Burlington, who died June 26, 1906.

By his will, executed April 25, 1904, Mr. Peck gave the residue of his estate to the executors therein named, in trust, to pay the net income thereof, semi-annually, to his niece, Katherine Keyes Peck and his nephews, Benjamin M. Peck and John H. F. Peck, in specified proportions, during their respective lives. He also provided that at the death of any of these beneficiaries, his or her share of income should be paid to the survivor or survivors of them; and that at the death of the last survivor, the said residue should be divided among the heirs of said beneficiaries in the same proportions as said income was given.

By a codicil executed July 21, 1904, a legacy of $5,000 given in the will to Sayles Nichols, one of the executors, was conditionally increased to $10,000.

By a codicil executed December 8, 1904, the testator, after referring to the provisions of the residuary clause of the will, made the following provision: "I hereby change and revoke so much of said residuary clause of my will as directs the disposition of the share of income of a deceased beneficiary, and also of the residuum after the death of all said beneficiaries, and in lieu thereof I direct as follows: that if said Katherine Keyes Peck shall die before the other beneficiaries or either of them, then the share of income theretofore paid to her shall thereafter be paid to her heirs; that upon the death of said Benjamin

M. Peck and John H. F. Peck, respectively, the share of said income theretofore paid to such deceased beneficiary shall thereafter be paid to the said Katherine Keyes Peck, if she be surviving,—otherwise to her heirs."

The only questions submitted relate to (1) the validity of the trust created in the residuary clause of the will, as affected by the second codicil and (2) the amount of the legacy to Sayles Nichols.

The appellants insist that the second codicil entirely and finally revokes the will so far as the disposition of the residue of the estate is concerned; that the provision therein for the heirs of Katherine Keyes Peck offends the rule against perpetuities and is therefor void; that the trust, as attempted, is entire and indivisible, and the ultimate gift over being void, the whole trust fails; and that the result is an intestacy as to the residue, which residue should have been decreed to the heirs of Edward W. Peck according to the statutory provisions.

[1, 2]   It is agreed that under the law no future interest in property is valid unless it must vest not later than twenty-one years (and the period of actual gestation) after some life in being at its creation.   So, the interest here in question is too remote to be valid if it might vest after the termination of a life in being at Mr. Peck's decease and twenty-one years and the fraction specified, thereafter. *Brattleboro* v. *Mead*, 43 Vt. 556.   This question is unaffected by the fact that Katherine Keyes Peck has outlived the other beneficiaries of the trust; for it depends not at all on what has come to pass, but wholly on what might have happened looking forward from the time when the will took effect. *In re Wilcox*, 194 N. Y. 288, 87 N. E. 497; *In re Rong's Estate*, 109 Minn. 191, 123 N. W. 471, 806, 26 L. R. A. (N. S.), 825; *Coggin's Appeal*, 124 Pa. 10, 16 Atl. 579, 10 A. S. R. 565. The test is not to be applied until after the instrument has been construed (*Taylor* v. *Crosson*, 11 Del. 145, 98 Atl. 375, *Rhode Island Hospital Trust Co.* v. *Peck*, 40 R. I. 519, 101 Atl. 430, *Merrill* v. *Winchester*, 120 Me. 203, 113 Atl. 261); but then the question is to be determined by the remotest time when by any possibility the gift over may take effect. *Brattleboro* v. *Mead*, supra; *In re Well's Estate*, 69 Vt. 388, 38 Atl. 83.

It is admitted that the will and codicil are free from legal infirmity clear down to the last four words of the latter as quoted

above.   But it is earnestly argued that these words, taken in
connection with the revocation already referred to, postpone the
vesting of the principal of the trust fund beyond the period
allowed by the law.   There is only one possible construction of
the whole instrument that could bring about this result.   If, as
claimed by the appellants, the effect of the codicil is to cancel the
trust created for the duration of the three lives mentioned and
to erect in its place another, the income of which was to be paid
to the heirs of Katherine Keyes Peck, direct and collateral, year
after year as long as any might exist,—the principal then, and
not before, to be distributed,—the logic of their argument is
irresistible and their conclusion sound.   But is this the purpose
and effect of the codicil?   Did the testator intend thus to change
the whole scheme of his benefaction?   We think not.

[3]   The law presumes that a testator intended to give his
will a meaning that will make it legally effective.   *In re Ander-
son's Estate,* 269 Pa. 535, 112 Atl. 766.   It favors a testamentary
construction that vests the estate.   So, if two constructions are
fairly open, one of which will turn a bequest into an illegal
perpetuity, and the other will make it valid and operative, the
latter should be preferred.   *Allen* v. *Almey,* 87 Conn. 517, 89
Atl. 205, Ann. Cas. 1917 B, 112; *Towle* v. *Doe,* 97 Me. 427, 54 Atl.
1072; *In re Phelp's Estate,* 182 Cal. 752, 190 Pac. 17; *In re
Stickney's Will,* 85 Md. 79, 36 Atl. 654, 35 L. R. A. 693, 60
A. S. R. 308; *Coggin's Appeal,* 124 Pa. 10, 16 Atl. 579, 10
A. S. R. 565; *Taylor* v. *Crosson,* 11 Del. 145, 98 Atl. 375.   In
support of their interpretation of this will, the appellants call
attention to the fact that the original provision distributing the
principal of the trust after the death of the three beneficiaries is
in express terms revoked by the codicil, and the income alone is
disposed of by the latter.   This, they say, results in an intestacy
as to such principal, and the whole trust being void under the
codicil, such principal should have been decreed to the heirs of
Mr. Peck in their proper proportions.   But if the trust is not
void under the codicil, we have no present concern with what
may ultimately become of the principal.   It is plain that the
primary purpose of the testator, as shown by the original will,
was to provide an income for his niece and two nephews.   When
the last of these deceased, the principal was to be divided.   The
codicil changes the survivorship rights in the income, but is

insufficient to show a change in the testator's purpose as to the duration of the trust. His purpose as to the income changed, and Katherine Keyes Peck became the favorite of the will. But the testator manifests no special regard for her heirs, and only makes provision for them in case she died before his nephews. If the provision of the codicil was that the share of a deceased nephew should thereafter be paid to Katherine Keyes Peck, and nothing more, there would be no difficulty and the meaning would be plain. Such share would then be payable to her during the life of the trust as originally created and no longer. This, we think, is as long as the testator intended under the codicil to hold the fund together.

[4] The use of the words "her heirs," without more, indicates that the testator did not intend to extend the trust indefinitely. The word "heirs" is ordinarily used to designate those persons who will answer to that description at the death of the ancestor. *State Street Trust Co.* v. *Sampson,* 228 Mass. 411, 117 N. E. 832; *Simes* v. *Ward,* 78 N. H. 533, 103 Atl. 310. Primarily, it refers to those who would be entitled, under the statutes of distribution, to take the intestate property of the person whose heirs they are called. *Hodges* v. *Phelps,* 65 Vt. 303, 26 Atl. 625; *In re Irish's Will,* 89 Vt. 56, 94 Atl. 173, Ann. Cas. 1917 C, 1154. So, when a will gives a remainder to the "heirs" of a life-tenant, the gift is to those persons who, at the latter's death, are found to be his heirs, unless the language of the instrument when "taken by its four corners" and read in the light of the circumstances then existing and known to the testator, evidence an intention to give the term something more or different than its ordinary meaning. *Wolcott* v. *Robinson,* 214 Mass. 172, 100 N. E. 1109; *Menard* v. *Campbell,* 180 Mich. 583, 147 N. W. 556, Ann. Cas. 1916 A, 802.

Upon full and careful consideration, we are satisfied that the appellants' interpretation of the will as affected by the codicil is unsound; that it was not the purpose and intent of the latter to extend the life of the trust; and that its true and only purpose was to provide for a disposition of Katherine Keyes Peck's share of the income during the interval between her death and that of the nephews or the surviving nephew,—in case she failed to outlive them. This construction eliminates any question under the rule against perpetuities.

[5]   It follows that the court below was not in error in affirming that part of the decree which, in effect, declined to make distribution of the principal of the trust, and directed the trustee to apply, at the death of Katherine Keyes Peck, for direction in respect to the disposition of such principal.   The time to decree that has not arrived.   At her death, it will be a proper subject for the consideration and decree of the probate court. *Morse* v. *Lyman,* 64 Vt. 167, 24 Atl. 763; *In re Well's Will,* 69 Vt. 388, 38 Atl. 83.

[6]   As we have seen, the will gave Sayles Nichols a legacy of $5,000.   The provision of the first codicil, above referred to, is as follows: "Whereas, I have in my said will given Sayles Nichols a legacy of five thousand dollars,—it is my will that in case I shall die seized and possessed either of that portion of the estate of my late wife provided for me as husband under the statutes of this state upon waiver of the provisions of her will, or one-third of the residue of said estate under an agreement therefor then that said legacy to said Nichols be increased the sum of five thousand dollars, so that he shall receive out of my estate ten thousand instead of five thousand dollars." The decree appealed from gave the estate of Sayles Nichols,—he having deceased,—the sum of ten thousand dollars, with interest thereon; and this is said to have been error.

The record shows that at the time this codicil was executed, Mr. Peck was negotiating with those interested, in the estate of Harriet C. Peck for an adjustment and compromise of the litigation and difficulties which had arisen in connection with the settlement of her estate.   He had proposed to take one-third of her estate in lieu of his statutory share under a waiver of the will.   These negotiations having failed, Mr. Peck obtained an extension of time for filing his waiver, and on December 12, 1904, he filed such waiver in the probate court.   Protracted litigation followed, and it was not until 1908 that a decree was entered in the probate court giving Mr. Peck $2,000 and one-half the remainder of Mrs. Peck's estate, and not until 1918 that the litigation terminated when a consent decree was entered in that court by which his share in her estate was fixed at $79,742.91.   It is claimed that this sum was less than a statutory share, and figures are quoted to show it; but it is enough to say that, on the record we are not warranted in assuming that the amount specified was

not the true amount due Mr. Peck under his waiver. If the decree awarding the Nichols legacy at $10,000 was correct, it is because Mr. Peck died "seized and possessed" of a husband's share in a deceased wife's estate within the true meaning of the language of the codicil. That he did not die "seized and possessed" in the literal sense of those terms is admitted. Used in their strict, common-law sense, the words "seizin" and "possession" do not mean the same thing. The former properly pertains to real estate and the latter to personal property. But nowadays they are often used in deeds and wills to mean the same thing. *Savage* v. *Savage,* 19 Or. 112, 23 Pac. 890, 20 A. S. R. 795; *Manchester* v. *Loomis,* 191 Iowa 554, 181 N. W. 415. "In American jurisprudence," says Mr. Justice Swayne, in *McNitt* v. *Turner,* 16 Wall. 352, 21 L. ed. 341, "it (seizin) means, generally, ownership." And in *Thompson* v. *Fidelity Trust Co.,* 268 Pa. 203, 110 Atl. 770, it is said that the terms "seized" and "possessed" are now frequently used in reference to all sorts of property ownership. It is in just this sense of ownership that the words were used in the instrument before us. It was plainly the intention of the testator to increase this legacy in case he died the owner of the interest specified. And he did own it when he died, for from the moment the waiver was filed his right to it was fully established. *In re Peck's Estate,* 80 Vt. 469, 68 Atl. 433.

[7] Nor, in the circumstances, was there error in allowing interest on this legacy. At the time of his death, Mr. Peck's estate inventoried about $12,500. The amount of his debts, if any, is not given. His estate was deeply involved in litigation, which as we have seen did not end until more than twelve years later. Cash legacies to persons other than Nichols were given by the codicil. No decree of the probate court had been made. The executor was, so far as this record shows, well justified in deferring payment of his own legacy, until the result of the litigation was known; for, if it went against him, the assets of Mr. Peck's estate might be so depleted as to preclude the payment of the cash legacies in whole or in part. The executor was in nowise to blame for this situation,—though if he had been, it might not result in his loss of interest. *In re Woodward's Estate,* 78 Vt. 254, 62 Atl. 718, 6 Ann. Cas. 524.

*Judgment affirmed. Let the result be certified to the probate court.*